678 A.2d 773

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**·Leslie C.X. BEASLEY, Appellant.**

Supreme Court of Pennsylvania.

Submitted Sept. 1, 1995.

Decided June 18, 1996.

Reargument Denied Aug. 7, 1996.

George H. Newman, Philadelphia, for Appellant.

Catherine Marshall, Philadelphia, Robert A. Graci, Harrisburg, for Appellee.

Before FLAHERTY, ZAPPALA, CAPPY, CASTILLE, NIGRO and NEWMAN, JJ.

*OPINION OF THE COURT*

FLAHERTY, Justice.

Appellant, Leslie C.X. Beasley, was convicted of murder of the first degree and possession of an instrument of crime. The conviction stemmed from the shooting death of police officer Ernest Davis at a restaurant in Philadelphia. The officer had gone to the restaurant in response to a radio dispatch alerting him that a man with a gun was present

there. When the officer arrived at the restaurant, appellant shot and killed him.

After a penalty phase hearing, the jury returned a sentence of death, finding no mitigating factors and two aggravating factors: the victim was a peace officer who was killed in the performance of his duties;[1] and appellant had a significant history of felony convictions involving the use or threat of violence to other persons[2] as appellant concededly had been convicted of murder once before.[3] Post-verdict motions were heard and denied and appellant was formally sentenced to death and additionally sentenced to a consecutive term of two and one-half to five years for possession of an instrument of crime.

Following an evidentiary hearing, appellant's motion for a new trial on the grounds of ineffective assistance of trial counsel was denied.[4] This court affirmed. *Commonwealth v. Beasley*, 504 Pa. 485, 475 A.2d 730 (1984).

Appellant then filed a *pro se* petition for relief under the Post Conviction Hearing Act, 42 Pa.C.S. § 9541 *et seq.* ("PCHA") (repealed) and, following evidentiary hearings, the court denied his claims. On appeal, Superior Court set aside the death sentence and remanded the case for imposition of a life sentence. *Commonwealth v. Beasley*, 377 Pa.Super. 648, 541 A.2d 1148 (1988).[5] This court reversed and reinstated appellant's death sentence. *Commonwealth v. Beasley*, 524 Pa. 34, 568 A.2d 1235 (1990).

Appellant thereafter filed a *pro se* petition for writ of habeas corpus under 28 U.S.C. § 2254. The district court

1. 42 Pa.C.S. § 9711(d)(1).

2. 42 Pa.C.S. § 9711(d)(9).

3. *See Commonwealth v. Beasley*, 504 Pa. 485, 498 n. 3, 475 A.2d 730, 737 n. 3 (1984).

4. Appellant first filed a *pro se* notice of appeal to this court alleging claims of ineffectiveness of trial counsel. This court remanded the matter for an evidentiary hearing.

5. The Superior Court had jurisdiction of all appeals from the denial of relief under the now-repealed PCHA. *Commonwealth v. Lesko*, 509 Pa. 67, 501 A.2d 200 (1985).

granted appellant's motion to hold the federal habeas corpus petition in abeyance and to stay his execution pending exhaustion of state remedies. Appellant subsequently filed a petition pursuant to the Post Conviction Relief Act, 42 Pa.C.S. §§ 9541–9546 (1988) ("PCRA").[6] Following a review of appellant's claims, the PCRA court denied appellant's petition without a hearing. This appeal followed.[7]

█ The Commonwealth first argues that the post-conviction petition should be denied absent a demonstration by appellant that a miscarriage of justice has occurred. A second or subsequent post-conviction request for relief will not be entertained unless a strong prima facie showing is offered to demonstrate that a miscarriage of justice may have occurred. *Commonwealth v. Lawson*, 519 Pa. 504, 549 A.2d 107 (1988). This standard is met only if petitioner can demonstrate either: (a) the proceedings resulting in his conviction were so unfair that a miscarriage of justice occurred which no civilized society can tolerate; or (b) he is innocent of the crimes charged. *Commonwealth v. Szuchon*, 534 Pa. 483, 486, 633 A.2d 1098, 1099–1100 (1993). Appellant has not attempted to meet either leg of the *Szuchon* test in this appeal, his second request for collateral review. The PCRA court correctly concluded that appellant's petition could be dismissed on this ground alone. Nevertheless, since this is a capital case, this court will address appellant's claims.

The Commonwealth also argues that appellant is ineligible for relief under the PCRA as his claims were previously litigated or waived and, in any case, are meritless. Appellant is required by 42 Pa.C.S. § 9543 to demonstrate eligibility for relief under the PCRA. Section 9543(a) mandates that appellant's allegation of error has not been previously litigated and other conditions have been met. According to 42 Pa.C.S.

6. The PCRA replaced and reenacted the PCHA. A final order under the PCRA in a death penalty case is no longer appealed to the Superior Court but is appealed directly to this court. 42 Pa.C.S. § 9546(d); *Commonwealth v. Maxwell*, 534 Pa. 23, 626 A.2d 499 (1993).

7. Appeal was taken to the Superior Court which transferred the matter to this court by order dated November 25, 1992.

§ 9544(a), an issue has been previously litigated when: "...
(2) the highest appellate court in which the petitioner could
have had review as a matter of right has ruled on the merits
of the issue, or (3) it has been raised and decided in a
proceeding collaterally attacking the conviction and sentence."

Where claims allegedly have not been previously litigated,
there must be adherence with the requirements of 42 Pa.C.S.
§ 9543(a)(3) which states:

> That the allegation of error has not been previously litigated
> and one of the following applies: .
>
> (i) The allegation of error has not been waived.
>
> (ii) If the allegation of error has been waived, the alleged
> error has resulted in the conviction or affirmance of
> sentence of an innocent individual.
>
> (iii) If the allegation of error has been waived, the waiver
> of the allegation of error during pretrial, trial, post-trial
> or direct appeal proceedings does not constitute a State
> procedural default barring Federal habeas corpus relief.

42 Pa.C.S. § 9544(b) provides that an issue has been
waived "if the petitioner could have raised it but failed to do so
... at the trial, ... [or] on appeal...." If appellant could
have raised issues on direct appeal and did not, these issues
must be deemed waived under § 9544 unless an anti-waiver
rule in 42 Pa.C.S. § 9543(a)(3)(ii) or (iii) applies. Since appel-
lant has not claimed that any alleged error resulted in the
conviction of an innocent individual, the focus of this inquiry is
on 42 Pa.C.S. § 9543(a)(3)(iii). *Commonwealth v. Peterkin,*
538 Pa. 455, 649 A.2d 121 (1994).

Waiver is excused under the PCRA where: (1) inef-
fective assistance of counsel is demonstrated; and, (2) appel-
lant had a constitutional right to counsel at the stage in the
state proceedings where counsel's ineffectiveness resulted in
the waiver. *Coleman v. Thompson,* 501 U.S. 722, 111 S.Ct.
2546, 115 L.Ed.2d 640 (1991). The accused has a constitution-
al right to counsel on direct appeal but not in state collateral
proceedings. *Murray v. Giarratano,* 492 U.S. 1, 109 S.Ct.
2765, 106 L.Ed.2d 1 (1989); *Pennsylvania v. Finley,* 481 U.S.

551, 107 S.Ct. 1990, 95 L.Ed.2d 539 (1987). In appellant's case, ineffective assistance of counsel will excuse the waiver under 42 Pa.C.S. § 9543(a)(3)(iii) only with regard to claims of ineffectiveness of counsel at trial and on direct appeal and provided the standards announced in *Commonwealth v. Pierce*, 515 Pa. 153, 527 A.2d 973 (1987), and its progeny are met.

*Commonwealth v. Pierce*, 515 Pa. 153, 527 A.2d 973 (1987), and subsequent cases require a defendant to demonstrate: (1) the underlying claim is of arguable merit; (2) counsel's performance was unreasonable; and (3) counsel's ineffectiveness prejudiced defendant. An appellant cannot obtain post-conviction review of claims previously litigated on appeal by alleging ineffective assistance of prior counsel and presenting new theories of relief to support previously litigated claims. *Commonwealth v. Peterkin, supra.* Further, counsel cannot be considered ineffective for failing to assert a meritless claim. *Id.* And finally, where a PCHA court's credibility determination is supported by the record, it is binding on the reviewing court. *Commonwealth v. Garrity*, 509 Pa. 46, 56, 500 A.2d 1106, 1111 (1985).

In summary, appellant must first demonstrate the claim has not been previously litigated. If the claim has not been previously litigated, appellant must then demonstrate the claim has not been waived. If the claim has been waived, appellant must demonstrate the alleged error was the result of ineffective assistance of counsel during the trial, the penalty phase or on direct appeal. All except one of appellant's claims are framed in terms of ineffective assistance of counsel.

Appellant first argues that counsel was ineffective for failing to present purportedly available mitigation evidence of his mother and other witnesses during the penalty phase. When counsel follows the defendant's strategy at the penalty phase, he cannot be deemed ineffective for doing so. *Commonwealth v. Griffin*, 537 Pa. 447, 644 A.2d 1167 (1994). At the PCHA hearing, trial counsel testified that he advised appellant to testify and to obtain others to testify on his

behalf. Counsel also testified that appellant failed to provide counsel with any names of possible mitigation witnesses and refused to permit any of his family members, except his mother, to be called as a witness. The PCHA court did not err in concluding appellant personally elected not to present mitigation evidence or in denying relief.

Even assuming appellant could prove that he did not dictate strategy at the penalty phase, he is still not entitled to relief. Failure to present mitigation evidence, without more, is not *per se* ineffective assistance of counsel. *Commonwealth v. Yarris*, 519 Pa. 571, 606, 549 A.2d 513, 531 (1988). Rather, appellant must show how the testimony of the uncalled witness would have been beneficial under the circumstances of his case. *Commonwealth v. McNeil*, 506 Pa. 607, 617, 487 A.2d 802, 807 (1985).

Appellant's current list contains eleven persons, nine of whom testified either in person or by stipulation during the 1986 PCHA proceedings. The PCHA court ruled that appellant failed to show he was prejudiced by the absence of these witnesses, most of whom had had sporadic contact with appellant at the time of trial or who could provide no mitigating evidence.[8]

8. One of these witnesses was the medical records custodian at Friends' Hospital who, appellant says, would have testified for the purpose of introducing evidence about his psychological history and condition when he was hospitalized at age seventeen, twelve years before the murder of the officer, for blackouts and other psychological problems. At the PCHA hearing, the medical records were attached to the brief as evidence of mitigation. These records, not submitted in the penalty phase, reflect appellant's inability to recall the incident that led to his hospitalization at Friends' Hospital.

This evidence is insufficient to establish a pattern of blackouts for they contain no reference to such a pattern. In addition, these records contained other revelations which cast appellant in a bad light. E.g., he had fathered three children out of wedlock by age seventeen; he was a defendant in a pending murder case; and he was described in a psychological examination as aggressive with fantasies of violence. In light of the numerous detrimental entries, counsel may not be faulted for not introducing these records at the penalty phase. *Commonwealth v. Yarris*, 519 Pa. 571, 549 A.2d 513 (1988).

■■■ The record also reflects that counsel had a reasonable basis for not presenting additional witnesses at the penalty phase. The trial court had ruled, correctly at the time, that any mitigation witnesses could be cross-examined not only about appellant's prior homicide conviction in New Jersey but also about the shotgun murder of Keith Singleton for which he was then awaiting trial.[9] *See, infra.* Further, this court has ruled the testimony of one witness on the list, appellant's mother, was not mitigating evidence. *Commonwealth v. Beasley,* 504 Pa. 485, 501, 475 A.2d 730, 739 (1984).[10] The remaining two witnesses on the current list, both of whom were withdrawn from the 1986 list, allegedly would have testified about appellant's early years and neighborliness. Appellant has not claimed withdrawal of the two names constituted ineffective assistance of counsel, has failed to demonstrate the willingness of either witness to testify on appellant's behalf, and has not demonstrated how error occurred or prejudice resulted. On review of the record, appellant has demonstrat-

**9.** Appellant was subsequently convicted of the Singleton murder and sentenced to death. This court affirmed that sentence. *Commonwealth v. Beasley,* 505 Pa. 279, 479 A.2d 460 (1984).

**10.** Appellant appears to argue that his PCHA counsel should have challenged in this court the excluded, allegedly mitigating testimony of appellant's mother about the duration of appellant's alcoholic blackouts at age seventeen, twelve years before the killing. On direct appeal, this court stated that such evidence was not evidence of mitigation respecting the present offense and, therefore, appellant was not denied the opportunity to present evidence of mitigation. *Commonwealth v. Beasley,* 504 Pa. 485, 501, 475 A.2d 730, 739 (1984). Appellant raised this claim of ineffectiveness in his 1986 PCHA petition for relief. The PCHA court denied relief, Superior Court affirmed, *Commonwealth v. Beasley,* 377 Pa.Super. 648, 541 A.2d 1148 (1988), and no allowance of appeal on this issue was sought.

Appellant, in effect, argues that PCHA counsel was ineffective for failing to seek allowance of appeal on this issue and, thus, waiver should be excused. This argument fails because appellant cannot meet either leg of the two-pronged test of *Coleman, supra,* for waiver. First, appellant has not demonstrated evidence that meets the requirements of *Pierce,* particularly the prejudice leg. Also, under *Murray* and *Pennsylvania, supra,* he had no constitutional right to counsel during the collateral attack. Therefore, waiver is not excused. Consequently, the underlying claim has been previously litigated and discretionary review of the issue has been waived.

ed neither error nor prejudice by the absence of any of these alleged mitigation witnesses.

 Appellant next claims that trial counsel was ineffective for failing to object to the trial court's ruling that mitigation witnesses could be cross-examined about appellant's prior homicide conviction in New Jersey and the murder of Keith Singleton for which he was then awaiting trial, and for failing to preserve the issue for review. Appellant argues that the Commonwealth could not submit the prior murder conviction until appellant submitted evidence of mitigation or no significant history of prior criminal convictions under 42 Pa.C.S. § 9711(e)(1). *Commonwealth v. Marshall,* 537 Pa. 336, 643 A.2d 1070, 1074 (1994), commands otherwise. In *Marshall,* this court ruled that the prosecution has the burden of proving aggravating circumstances beyond a reasonable doubt. Appellant's claim is meritless.

 Appellant then argues the evidence of the Singleton murder was inadmissible at the penalty phase because appellant had not yet been convicted of this crime.[11] Counsel is not ineffective for failing to raise a meritless objection at the time of trial or for failing to predict legal developments. *Commonwealth v. Yarris,* 519 Pa. 571, 605–06, 549 A.2d 513, 531 (1988); *Commonwealth v. Anderson,* 501 Pa. 275, 461 A.2d 208 (1983).

 Counsel committed no error at the time of appellant's penalty hearing in April of 1981. Then, prior arrests were properly admissible for impeachment of a character witness. This court abrogated that long standing rule seven months later in *Commonwealth v. Scott,* 496 Pa. 188, 436 A.2d 607 (1981), and limited cross-examination for impeachment of character witnesses to convictions rather than arrests. Since the challenged practice was proper at the time of trial, an objection would have been frivolous and, therefore, appellant has failed to demonstrate error. In any event, appellant fails to demonstrate prejudice since mitigation witnesses properly

11. This court affirmed appellant's death sentence for the Singleton murder. *Commonwealth v. Beasley,* 505 Pa. 279, 479 A.2d 460 (1984).

could have been questioned about the New Jersey homicide conviction. Appellant has not demonstrated ineffectiveness.[12]

■ Appellant's third claim is that trial counsel was ineffective for not challenging the aggravating circumstance of "significant history of felony convictions involving the use of or threat of violence to the person." 42 Pa.C.S. § 9711(d)(9). Appellant contends his prior homicide conviction in New Jersey did not establish a "significant history" of prior violent felonies. He cites *Commonwealth v. Goins*, 508 Pa. 270, 495 A.2d 527 (1985). In *Goins*, the prosecution proved the sole aggravating factor of "significant history" and the presence of no mitigating factors. The *Goins* court ruled a "significant history" for purposes of 42 Pa.C.S. § 9711(d)(9) is not shown where the prior history of violent felonies consists of one prior conviction for third degree murder. *Goins*, at 281, 495 A.2d at 533 (1985).

Appellant's claim fails for three reasons. First, *Goins* does not control because it was decided one year after appellant's direct appeal was concluded and dealt only with one aggravating factor. Second, trial counsel is not ineffective for failing to anticipate this court's decision. *Commonwealth v. Fahy*, 537 Pa. 533, 645 A.2d 199 (1994). Third, no prejudice can be demonstrated because, as this court has ruled, appellant's verdict of death was supported by another undisputed aggravating circumstance, the murder of an on-duty police officer, and by no mitigating circumstances. 42 Pa.C.S. § 9711(c)(i)(iv); *Commonwealth v. Beasley*, 504 Pa. 485, 500, 475 A.2d 730, 738 (1984). Appellant has demonstrated neither error nor prejudice.

■ Appellant's fourth claim is that trial counsel was ineffective for not objecting to the admissibility of testimony concerning the facts and circumstances of appellant's prior

12. Appellant also argues that counsel was ineffective for failing to call the trial judge as a rebuttal witness at the PCHA hearing regarding his ruling concerning the admissibility of Commonwealth rebuttal testimony and the reasonableness of counsel's strategy at the penalty phase. He cites no authority and offers no sound argument for his claim and, thus, it has no merit.

homicide conviction in New Jersey while appellant was a juvenile. The prosecution, which has the burden of proving aggravating circumstances beyond a reasonable doubt, must inform the jury of the history and natural development of the events and offenses of which a defendant is convicted so that the penalty-phase jury may truly understand the nature of the offenses and the defendant's character. *Commonwealth v. Marshall,* 537 Pa. 336, 343, 643 A.2d 1070, 1074 (1994). Here, appellant has failed to demonstrate how the prosecution improperly carried out its duty.[13] Appellant has shown neither error nor prejudice.

Appellant's fifth contention is that trial counsel was ineffective for not objecting to the prosecutor's closing argument at the penalty phase. Appellant argues that the prosecutor improperly referred to appellant's prior juvenile homicide in New Jersey, improperly argued that appellant's New Jersey conviction was "rather similar" to the instant murder and exceeded the bounds of oratorical flair by urging the jury to impose the death sentence to prevent his future release on parole.

Appellant has previously and unsuccessfully focused on the prosecutor's remarks about the appellate process in the closing argument for the penalty phase. The PCHA court denied relief, reasoning that the prosecutor's remarks were based on legitimate inferences from the evidence adduced at the penalty-phase hearing. This court affirmed. *Commonwealth v. Beasley,* 524 Pa. 34, 568 A.2d 1235 (1990). Thus, this issue has been litigated. We caution that, absent a persuasive explanation, dissection of a prosecutor's summation in successive collateral attacks in the hope of revealing some error is an abuse of collateral review. Because appellant argues different points in the context of ineffective assistance of counsel in this capital case, we reluctantly address appellant's claim.

13. For example, appellant claims the New Jersey conviction was inadmissible at the penalty phase but fails to explain why or cite to any authority.

A prosecutor is given wide latitude to advocate the Commonwealth's case. *Commonwealth v. D'Amato*, 514 Pa. 471, 489, 526 A.2d 300, 309 (1987). The prosecutor may properly urge all fair deductions from the evidence as well as employ a certain degree of rhetorical flair in so doing. *Commonwealth v. Duffey*, 519 Pa. 348, 370–71, 548 A.2d 1178, 1189–1190 (1988). And, the prosecutor is permitted to argue in favor of the death sentence. 42 Pa.C.S. § 9711(a)(3).

Appellant has failed to demonstrate any error or prejudice in two respects. First, the prosecutor's remarks about the prior conviction could not have affected the penalty-phase jury's verdict because the jury unanimously found two aggravating circumstances and no mitigating circumstances. The death penalty statute mandated the sentence of death with the presence of only one aggravating circumstance and no mitigating circumstances. The penalty-phase jury never engaged in any weighing process which the prosecution's comments might otherwise have arguably influenced. *Commonwealth v. Beasley*, 524 Pa. 34, 36, 568 A.2d 1235, 1237 (1990). Thus, the verdict was not, as appellant contends, the product of passion and prejudice generated by the prosecution's appeal for vengeance.

Second, based on a review of the record, the prosecutor's references were not improper. As discussed *supra*, the prosecutor's reference to the arrest in the Singleton killing was not inappropriate at the time of the penalty phase. Also, his argument that the prior homicide conviction was "rather similar" to the instant murder was not improper because the prosecutor is permitted to draw whatever parallels the evidence establishes. Here, the parallel was, as the prosecutor argued, that both killings involved fatal shootings by guns. Finally, the prosecutor properly commented about the deterrent effect of the death penalty and urged the imposition of the death penalty based on the evidence establishing the aggravating circumstances.

Appellant's sixth claim is that trial counsel failed to present available evidence of appellant's level of intoxication at

the time of the offense in order to negate specific intent. It appears that newspaper articles written at the time of the killing reflected the arresting officer's alleged comment that appellant was intoxicated. The record reflects that the officer testified at the suppression hearing and at trial that appellant was not intoxicated. Appellant argues that counsel should have examined the newspaper reporters and cross-examined the arresting officer at trial about these statements.

Appellant has not shown error because he has not shown that counsel knew of the alleged comment in the newspapers. Further, he has not demonstrated prejudice in light of the other evidence presented by counsel, e.g., testimony from a companion that he and appellant had consumed one gallon of Thunderbird wine an hour before the murder and testimony appellant had vomited following his arrest. Thus, appellant has failed to demonstrate that trial and, thus, subsequent counsel were ineffective.

 Appellant next argues that counsel was ineffective for failing to request a change of venue due to pretrial publicity concerning both the victim and appellant. The mere existence of pretrial publicity does not warrant a presumption of prejudice. *Commonwealth v. McCullum*, 529 Pa. 117, 125, 602 A.2d 313, 317 (1992). If pretrial publicity occurred, the inquiry turns to the nature of the publicity and its effect on the community. *Commonwealth v. Casper*, 481 Pa. 143, 151–54, 392 A.2d 287, 290–92 (1978). Factors to consider are: whether the publicity was factual and objective or sensational or inflammatory; whether the publicity revealed the accused's criminal record or referred to confessions, admissions or reenactments of the crime; and whether such information is the product of reports by the police or prosecutorial officers. *Commonwealth v. Pursell*, 508 Pa. 212, 221, 495 A.2d 183, 187 (1985). If any of these factors are found, the inquiry becomes whether publicity has been so extensive, so sustained and so pervasive that the community must be deemed to have been saturated with it. *Commonwealth v. Breakiron*, 524 Pa. 282, 286, 571 A.2d 1035, 1036 (1990). And, no relief is due notwithstanding the existence of prejudicial publicity where there has

been a sufficient "cooling-off" period between the publicity and the beginning of trial. *Commonwealth v. Gorby*, 527 Pa. 98, 108–09, 588 A.2d 902, 906–07 (1991).

■ Appellant has failed to demonstrate error. Here, the twelve newspaper articles submitted by appellant with his brief to this court all preceded the selection of the jury for appellant's trial by seven months.[14] All of the articles contained a factual and objective summary of the circumstances of the murder. While three articles referred to the fact appellant was on parole for the New Jersey homicide and an editorial referred to the loss suffered by both the victim's family and the citizens of Philadelphia, a "cooling off" period of seven months occurred. Appellant fails to establish the pervasive presence of inherently prejudicial publicity at the time of his trial such that a change of venue was warranted. Thus, appellant's claim of ineffectiveness fails.

■ Appellant then argues that counsel was ineffective for failing to object to the nonsequestration of the jurors for a weekend break prior to the penalty phase or to seek voir dire of the jury members on their return. The record reflects that the trial court cautioned the jury not to read anything about the case in the newspapers. The jurors are presumed to have followed that instruction. *Parker v. Randolph*, 442 U.S. 62, 75 n. 7, 99 S.Ct. 2132, 2140 n. 7, 60 L.Ed.2d 713 (1979); *Commonwealth v. Tilley*, 528 Pa. 125, 137, 595 A.2d 575, 583 (1991). Appellant argues that "extensive inflammatory publicity regarding the verdict" and appellant's prior record occurred during the weekend break which followed ten days of sequestration for the trial. Appellant submits three undated articles with his brief, one of which refers to the jury's return of the death penalty and, thus, is not relevant to the inquiry. One of the remaining two articles summarized the trial evidence and jury's verdict at the guilt phase. The other article stated appellant was on probation for a 1967 murder. Assuming any of the jurors saw this article, no taint occurred because

14. A thirteenth article post-dated his trial and, therefore, is not relevant to this inquiry.

evidence of this murder was presented at the penalty phase. Appellant has failed to show that a prejudicial news article was published or that jurors read it in violation of the court's instructions. He has thus failed to demonstrate, with regard to both claims, that counsel erred or prejudice resulted.

Appellant's ninth claim is that counsel was ineffective because he failed to object to the trial court's jury instruction as to intoxication on the grounds it was ambiguous and shifted the burden to appellant. In reviewing a claim of error in jury instructions, this court considers the instruction as a whole. *Commonwealth v. Thompson,* 538 Pa. 297, 307, 648 A.2d 315, 320 (1994). Here, the challenged instruction properly sets forth the law on voluntary intoxication as follows:

> Under Pennsylvania law, the general rule is that voluntary intoxication is not a defense to a criminal charge. Generally speaking, a person who voluntarily uses intoxicants cannot become so intoxicated that he is for that reason legally incapable of committing a crime. The general rule is subject to qualifications when the criminal charge is first degree murder.

> The defendant is permitted to claim as a defense that he was so intoxicated at the time of the killing that he did not have the specific intent to kill required for first degree murder. The Commonwealth has the burden of disproving this defense. Thus, you cannot find the defendant guilty of first degree murder unless you are satisfied beyond a reasonable doubt the defendant was not so intoxicated at the time of the killing that he was incapable of judging his acts and their consequences or incapable of forming a willful, deliberate, and premeditated design to kill.

Since the instruction states that the Commonwealth has the burden of disproving the defense of intoxication, the instruction read as a whole did not shift the burden to the appellant. Further, appellant has failed to explain how the instruction was ambiguous or confusing. This claim is meritless.

 Appellant's final claim of ineffectiveness is that counsel failed to obtain two witnesses at trial who were allegedly crucial to his defense and subsequent counsel were ineffective for failing to preserve the issue. This claim was previously litigated during the first post-conviction appeal.[15]

 Petitioner's final claim is that the Commonwealth withheld exculpatory evidence when it failed to disclose a plea agreement it had with an eyewitness to the shooting. The record reflects that John McDowell was one of three eyewitnesses who identified appellant as the killer. Appellant has submitted an alleged affidavit from McDowell who claims he agreed to provide perjured testimony against appellant in exchange for probation on four narcotics cases pending against him. He also claims he was instructed that, if asked, he should deny any such agreement.

 A constitutional violation warrants relief under the PCRA only where, under the circumstances of the case, it "so

---

**15.** The record reflects that the two witnesses, Judith Sylvester and Francine Haynes, were present inside a restaurant and observed appellant before he went outside and shot Officer Davis; however, they did not see the shooting. Both gave statements to police. At the evidentiary hearing, trial counsel explained that while he thought the statements were damaging to appellant, he did seek to interview them but was denied access to their addresses and telephone numbers. (The trial court properly prevented pretrial disclosure of the addresses and phone numbers on these non-eyewitnesses. *Commonwealth v. Colson*, 507 Pa. 440, 463, 490 A.2d 811, 823 (1985), *cert. denied*, 476 U.S. 1140, 106 S.Ct. 2245, 90 L.Ed.2d 692 (1986).) When appellant's co-defendant unexpectedly testified that a third man, James Churchill, was the shooter, counsel considered interviewing these witnesses because both witnesses had said that a man consistent with Churchill's appearance was rude to them at the restaurant. Counsel unsuccessfully sought to locate the two women.

The record also reflects that neither woman saw appellant confront their companion, Leonard Derry, inside the restaurant when appellant threatened Derry with the butt of his pistol. This caused Derry to call the police to report a gunman by height, weight and clothing that matched appellant's description, thus starting the chain of events that led to the fatal shooting of Officer Davis outside the restaurant. Further, the Commonwealth presented three eyewitnesses at trial, each of whom unequivocally identified appellant as the shooter. On review of the record, the testimony of these two women was not probative of whether appellant shot Officer Davis. Neither error nor prejudice has been demonstrated.

undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." 42 Pa.C.S. § 9543(a)(2)(i). Recanted testimony is among the least reliable evidence, especially where the recanting testimony involves an admission of perjury. *Commonwealth v. Gaddy*, 492 Pa. 434, 438, 424 A.2d 1268, 1270 (1981). The record reflects that McDowell was questioned about and specifically denied the existence of any deal in exchange for his testimony. On rebuttal, he testified that, just after he had completed his testimony in the Commonwealth's case in chief, he was sentenced to probation in all four of his outstanding drug cases. Thus, the jury was aware of the lenient treatment McDowell had received, notwithstanding his denial of a deal. Finally, assuming a constitutional violation did occur, McDowell's testimony was not essential to the truth-determining process as two other credible witnesses also unequivocally testified appellant was the shooter. This claim is meritless.

The order of the Court of Common Pleas of Philadelphia County is affirmed.

NIX, J., did not participate in the consideration or decision of this case.

CAPPY and NIGRO, JJ., join in the opinion of the court and file separate concurring opinions.

CAPPY, Justice, concurring.

I join in the decision of the majority. I write separately only to disassociate myself from the majority's use of the terms "so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place" when enunciating the standard for PCRA relief under 42 Pa.C.S. § 9543(a)(2)(i). (See Majority opinion at p. 575–76).

As I noted in my dissent in *Commonwealth v. Buehl*, 540 Pa. 493, 658 A.2d 771 (1995), wherein I questioned the meaning of this precise language, *albeit* with respect to § 9543(a)(2)(ii) and not (a)(2)(i), the only meaning that the terms "so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken

place" could have is that an "actual innocence" test must now be applied. Our system of justice requires, however, that there be articulable standards for determining guilt and for determining when a trial comports with due process and other constitutional guarantees. Guilt is to be determined by the Commonwealth proving beyond a reasonable doubt all of the elements of the crime charged, in a trial that is deemed to comply with the requisite constitutional guarantees, not by the defendant having to prove his innocence. Accordingly, if the Commonwealth proves all the elements of the crime charged, but there was a constitutional violation, perhaps because the Commonwealth, in proving those elements, admitted evidence which was unconstitutionally seized, can we say that the defendant has no recourse because he cannot prove his innocence?

However, since I agree with the majority's conclusion in the case *sub judice* that Appellant's claim of a constitutional violation is without merit, the recitation of the "truth-determining process" standard, in this instance, is of no moment. Thus, I join the majority's decision.[1]

NIGRO, Justice, concurring.

I join in the decision of the Majority. I write separately, however, because although I did not have an opportunity to participate in *Commonwealth v. Buehl,* 540 Pa. 493, 658 A.2d 771 (1995), I would have joined in Justice Cappy's dissent. As such, I join in the reasoning offered by my colleague Justice Cappy in his concurring opinion wherein he disassociates from the following language in the Majority opinion: "so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place". (See Majority opinion at p. 576). I do not believe that terminology

---

1. I also note my disagreement with the majority's statement at page 564 of its opinion that "[t]he accused has a constitutional right to counsel on direct appeal but not in state collateral proceedings." Although this is a correct statement as a matter of federal constitutional law, as we noted in *Commonwealth v. Travaglia,* 541 Pa. 108, 661 A.2d 352 (1995), this issue has not been resolved as a matter of Pennsylvania constitutional law.

578

properly sets forth the standard for PCRA relief pursuant to 42 Pa.C.S. § 9543(a)(2)(i).