J-A28029-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| FRANK HYMAN | |
| Appellant | No. 186 EDA 2019 |

Appeal from the PCRA Order entered December 19, 2018
In the Court of Common Pleas of Philadelphia County
Criminal Division at No: CP-51-CR-0002579-2007

BEFORE:   PANELLA, P.J., STABILE, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STABILE, J.                     **FILED MAY 20, 2020**

Appellant, Frank Hyman, appeals from an order dismissing his petition for relief under the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9546, without a hearing.  We affirm.

The PCRA court summarized the factual and procedural history of this case as follows:

> On December 19, 2006, around noon, Todd Yow was sitting on the porch of his West Philadelphia home with Timothy "Boo Boo" Scott, the victim, and a third man named "Keen."  From the porch, Scott saw [Appellant] drive by in a silver Hyundai.  Minutes later, [Appellant] parked the car around the corner and, accompanied by his friend Leon "Gutty" Blackball and a third man, walked to Yow's house in search of the victim.
>
> As they approached, someone in [Appellant]'s group said, "There go that 'N' word right there," and [Appellant] said, "This lititle motherfucker was supposed to be trying to kill me."  Scott replied, "No, not me."  Undeterred by Scott's plea, [Appellant] armed

---

[*] Former Justice specially assigned to the Superior Court.

himself with a .380 semiautomatic handgun and, along with one of his cohorts, shot at Scott more than ten times from five feet away. During the ambush, [Appellant] shot Scott through his face and hand. Although two men were shooting at him at the time, Scott was "absolutely" sure that [Appellant] was the one who shot him "[b]ecause he was the main one that [the victim] was focusing on and he was doing the talking." After shooting Scott in the face, [Appellant] and his cohorts fled.

Yow immediately called the police while Scott frantically ran through Yow's house, leaving a trail of blood behind him. Eventually Scott reemerged from the front door and Yow gave him a towel to hold over his bloodied face until an ambulance arrived to take him to a hospital. Scott later underwent surgery, permanently lost four teeth, and could not eat solid food for more than a month.

Yow and Scott testified to similar versions of events while [Appellant] testified to an entirely different set of events. According to [Appellant], he had gone to see Scott because he thought Scott was "probably in some type of trouble." When he arrived, Scott supposedly accused [Appellant] of having gotten Scott into trouble with his mother. [Appellant] testified that he was intimate with Scott's mother at the time of the shooting. [Appellant] testified that when he turned to leave the argument, he heard gunshots behind him. He then returned with his companions to his car, where they regrouped and one man allegedly confessed to [Appellant] that he shot Scott. In spite of [Appellant]'s reluctance to be a "snitch", he stated at trial that his friend, Leon "Cutty" Blackball, told him that he, Blackball, was the shooter as they drove away from the scene. [Appellant] nonetheless chose to give Blackball and the third man a ride to the 5200 block of Greenwall Street in Philadelphia, where the other men took the gun used in the shooting from the car because, [Appellant] explained, "I wasn't going to [let them] leave it with me."

The car [Appellant] was driving and claimed to own was stolen. Carol Ann Sucharski testified that sometime before December 1, 2006, she lent her car to another person but it was never returned. She reported the car stolen to police, who later recovered it in Philadelphia on January 13, 2007. When police returned the car to Sucharski, she found a loaded .380 handgun, [Appellant]'s driver's license, a retail-store card, an appointment

card, and so much clutter that the car "looked lived in." She immediately called the police, who went to her home to recover the items. Thereafter, the police questioned Scott about Sucharski's car. He positively identified it from photographs as the car that [Appellant] was driving just before [Appellant] shot him.

On December 10, 2010, a jury sitting before the Honorable Ellen Ceisler found [Appellant] guilty of attempted murder and aggravated assault.[1] On April 21, 2011, after reviewing the presentence report and a mental health evaluation, Judge Ceisler sentenced [Appellant] to 20 to 40 years' incarceration for attempted murder.[2] [Appellant] filed an appeal. On October 25, 2013, the Superior Court affirmed [Appellant]'s judgment of sentence. [Appellant] filed a petition for *allocator* to the Pennsylvania Supreme Court, which was denied on March 18, 2014.

On August 5, 2014, [Appellant] filed a *pro se* PCRA petition. On May 3, 2016, [Appellant] filed an Amended PCRA petition. On February 10, 2017, the Commonwealth filed a Motion to Dismiss. On June 26, 2017, Judge Ceisler dismissed [Appellant]'s PCRA petition. [Appellant] appealed the dismissal. On June 26, 2018, the Superior Court remanded [Appellant]'s PCRA petition because the PCRA Court failed to send a [Pa.R.Crim.P.] 907 Notice of Intent to Dismiss prior to dismissing [Appellant]'s PCRA petition. On September 26, 2018, this case was administratively assigned to this Court. On November 20, 2018, following a thorough review of the record, this Court sent [Appellant] a [Rule] 907 Notice of Intent to Dismiss. On December 17, 2018, [Appellant] filed a Response to the [Rule] 907 Notice. On December 19, 2018, this Court dismissed [Appellant]'s PCRA petition for lack of merit. On January 16, 2019, [Appellant] filed a notice of appeal.

PCRA Court Opinion, 3/29/19, at 2-4 (record citations omitted).

---

[1] The jury found Appellant not guilty of possession of an instrument of crime. It also made a special finding that Scott suffered serious bodily injury.

[2] Appellant's aggravated assault conviction merged for purposes of sentencing.

Appellant raises two issues in this appeal:

I. Whether the court erred in not granting relief on the PCRA petition alleging trial counsel and/or appellate counsel was ineffective.

II. Whether the court erred in denying Appellant's PCRA petition without an evidentiary hearing on the issues raised in the amended PCRA petition regarding trial counsel's ineffectiveness.

Appellant's Brief at 8.

A petitioner may obtain relief under the PCRA by pleading and proving "ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." 42 Pa.C.S.A. § 9543(a)(2)(ii). Counsel's effectiveness is presumed, and the petitioner bears the burden of proving otherwise. *Commonwealth v. Urwin*, 219 A.3d 167, 172 (Pa. Super. 2019). To establish ineffectiveness of counsel, the petitioner must plead and prove: (1) his underlying legal claim has arguable merit; (2) counsel's actions lacked any reasonable basis; and (3) counsel's actions prejudiced him. *Id.* Failure to satisfy any of these three prongs requires dismissal of the claim. *Id.*

The petitioner establishes prejudice by demonstrating that "counsel's chosen course of action had an adverse effect on the outcome of the proceedings." *Commonwealth v. Chambers*, 807 A.2d 872, 883 (Pa. 2002). "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been

different." *Id.* "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* "[A] criminal defendant alleging prejudice must show that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.*

When reviewing a PCRA order, we examine whether the record supports the PCRA court's factual findings and whether its legal conclusions are free from error. *Commonwealth v. Hannibal*, 156 A.3d 197, 206 (Pa. 2016). We view the PCRA court's findings and evidence of record in the light most favorable to the prevailing party. *Commonwealth v. Koehler*, 36 A.3d 121, 131 (Pa. 2012). The PCRA court's credibility determinations, when supported by the record, are binding, but we review the PCRA court's legal conclusions de novo. *Commonwealth v. Roney*, 79 A.3d 595, 603 (Pa. 2013). The petitioner has the burden of persuading us that the PCRA court erred and that such error requires relief. *Commonwealth v. Wholaver*, 177 A.3d 136, 144-45 (Pa. 2018).

At the time of trial, Scott, the victim, was charged with robbery and other felonies at CP-51-CR-0001938-2011 and was awaiting his preliminary hearing. In his first claim of ineffectiveness, Appellant claims that trial counsel negligently failed to cross-examine Scott about whether he was promised anything on his pending charges in return for testifying against Appellant. Appellant argues that cross-examination on this subject would have disclosed Scott's potential bias in favor of the Commonwealth. Although Appellant's

argument has some theoretical appeal, no relief is due because he cannot demonstrate prejudice.

There is no evidence that the Commonwealth promised any leniency to Scott. Nevertheless, defense counsel should have asked Scott "whether he expected or hoped for favorable treatment in exchange for his testimony." *Commonwealth v. Rickabaugh*, 706 A.2d 826, 840 (Pa. Super. 1997). This is because "even if no actual promises of leniency have been made, a witness may hope for favorable treatment from the prosecutor if the witness presently testifies in a way that is helpful to the prosecution." *Id.* at 839-40 (citing *Commonwealth v. Evans*, 512 A.2d 626, 631 (Pa. 1986)).

Nevertheless, Appellant cannot establish prejudice, because Yow, an independent eyewitness, testified credibly and unequivocally that Appellant shot Scott. Appellant was unable to establish that Yow harbored any bias against him. Indeed, Appellant admitted that he had no problem with Yow and "didn't even know him." N.T., 12/9/10, at 23-24. Conspicuously absent from Appellant's brief is any mention of Yow's testimony. Appellant's Brief at 17-18. For this reason, counsel's failure to cross-examine Scott does not undermine confidence in the outcome of this case. *See Commonwealth v. Beasley*, 678 A.2d 773, 783 (Pa. 1996) (in homicide case, PCRA petitioner's claim that Commonwealth concealed plea agreement with eyewitness did not warrant relief; eyewitness's testimony was not essential to truth-determining

process, because two other credible witnesses unequivocally testified petitioner was the shooter).

In his next claim of ineffectiveness, Appellant argues that defense counsel erred by stipulating to the fact that Appellant had two juvenile adjudications for felony theft. We disagree.

Pennsylvania Rule of Evidence 609 provides in relevant part:

(a) For the purpose of attacking the credibility of any witness, evidence that the witness has been convicted of a crime, whether by verdict or by plea of guilty or *nolo contendere*, must be admitted if it involved dishonesty or false statement.

(b) This subdivision (b) applies if more than 10 years have passed since the witness's conviction or release from confinement for it, whichever is later. Evidence of the conviction is admissible only if:

(1) its probative value substantially outweighs its prejudicial effect; and

(2) the proponent gives an adverse party reasonable written notice of the intent to use it so that the party has a fair opportunity to contest its use.

*Id.* Under Rule 609, "where the date of conviction or last date of confinement is within ten years of the trial, evidence of the conviction of a *crimen falsi* is *per se* admissible." Comment, Pa.R.E. 609.

The trial court properly admitted Appellant's theft adjudications under Rule 609. Theft is a crime of dishonesty. ***Commonwealth v. Cole***, —A.3d —, 2020 WL 400234, *3 (Pa. Super., Jan. 24. 2020) (citing ***Commonwealth v. LaMassa***, 532 A.2d 450, 452 (Pa. Super. 1987)). Juvenile adjudications for *crimen falsi* are admissible for impeachment purposes. ***Commonwealth***

- 7 -

*v. McKeever*, 689 A.2d 272, 274 (Pa. Super. 1997).  Appellant testified in his own defense during trial and admitted that he was released from confinement from his juvenile theft adjudications less than ten years before trial.  N.T., 12/8/10, at 105-06.  Moreover, the trial court correctly instructed the jury that these adjudications were only admissible to help the jury assess the credibility of his testimony.  N.T., 12/9/10, at 95-96.

Appellant suggests that juvenile adjudications entered more than ten years before trial, such as his theft adjudications, are more prejudicial than probative.  Appellant's Brief at 19.  We disagree.  Under Rule 609, the court need only balance the prejudice of *crimen falsi* evidence against its probative value when more than ten years have passed since the witness's adjudication **or** confinement.  Pa.R.E. 609(b).  Since Appellant was released from confinement for his theft adjudications less than ten years before trial, his adjudications were *per se* admissible.  Comment, Pa.R.E. 609.

Appellant also claims that introduction of the adjudications was unnecessary because the court instructed the jury that it could gauge Appellant's credibility by considering his interest in the outcome of the case, and this instruction "served the same purpose" as the adjudications.  **Id.**  Appellant cites no law for this proposition; nor do we know of any.  In our view, it was permissible to introduce Appellant's adjudications **and** to instruct the jury concerning Appellant's interest in the outcome of the case.

Next, Appellant contends that the Commonwealth had other ways to attack his credibility without introducing his prior adjudications. *Id.* Appellant does not describe what alternatives the Commonwealth had—and even if other alternatives existed, the Commonwealth still had the right to attack Appellant's credibility through all valid means at its disposal, including his theft adjudications.

In his third claim of ineffectiveness, Appellant argues that his attorney on direct appeal failed to object to the trial court's "inappropriate" comments and the prosecutor's "misstatements" at sentencing. Appellant also argues that direct appeal counsel failed to raise mitigating factors that warranted a shorter sentence. No relief is due.

At sentencing, the trial court applied the deadly weapons enhancement to the Sentencing Guidelines, stating: "It's not even *prima facie*, it's beyond a reasonable doubt in my personal opinion, why did the jury not find him not guilty of the gun? Frankly, I just don't know. So for this reason, I believe the deadly weapon enhancement is applicable in this case." N.T., 4/21/11, at 12. Appellant argues that direct appeal counsel was ineffective for failing to object to the court's expression of its "personal feelings." Appellant's Brief at 20. According to Appellant, the deadly weapons enhancement was inapplicable since the jury had acquitted Appellant of possession of an instrument of crime, regardless of the court's personal feelings.

PCRA relief is unavailable when an issue is "previously litigated." 42 Pa.C.S.A. § 9543(a)(3). An issue is previously litigated when, *inter alia*, "the highest appellate court in which the petitioner could have had review as a matter of right has ruled on the merits of the issue." 42 Pa.C.S.A. § 9544(a)(2).

Appellant's objection to direct appeal counsel's failure to challenge the court's comment fails because this issue was previously litigated on direct appeal. Direct appeal counsel argued in her appellate brief that the trial court erred by imposing the deadly weapon enhancement at sentencing. The trial court reasoned in its Pa.R.A.P. 1925 opinion that the deadly weapon enhancement applied, citing the same "beyond a reasonable doubt" comment that Appellant objects to presently. Trial Ct. Op., 2/21/12, at 11. This Court held on direct appeal that the trial court "adequately addressed and properly rejected the merits of this claim of sentencing error." ***Commonwealth v. Hyman***, 1422 EDA 2011, at 4 (Pa. Super., Oct. 25, 2013) (unpublished memorandum). In effect, we ruled that the trial court's comment at sentencing was proper. Moreover, this Court is the "highest appellate court in which Appellant could have had review" of this issue "as a matter of right."

42 Pa.C.S.A. § 9544(a)(2). Thus, Appellant's present argument is simply a rehash of a sentencing issue that has been previously litigated.[3]

Next, Appellant argues that the prosecutor made multiple misstatements during sentencing that direct appeal counsel failed to challenge. We address each statement below.

During sentencing, the prosecutor stated that (1) Appellant attempted to intimidate Scott into recanting his accusation against Appellant, (2) Appellant was playing games with the justice system, (3) Appellant's

_____

[3] We also note in *dicta* that application of the deadly weapons enhancement did not violate Appellant's rights under **Alleyne v. United States**, 570 U.S. 99 (2013), or **Apprendi v. New Jersey**, 530 U.S. 466 (2000). As this Court explained:

> In both [**Alleyne** and **Apprendi**], the Supreme Court determined that certain sentencing factors were considered elements of the underlying crime, and thus, to comply with the dictates of the Sixth Amendment, must be submitted to the jury and proven beyond a reasonable doubt instead being determined by the sentencing judge. However, this inquiry is not relevant to our case because of the nature of the DWE.
>
> **Alleyne** and **Apprendi** dealt with factors that either increased the mandatory minimum sentence or increased the prescribed sentencing range beyond the statutory maximum, respectively. Our case does not involve either situation; instead, we are dealing with a sentencing enhancement. If the enhancement applies, the sentencing court is required to raise the standard guideline range; however, the court retains the discretion to sentence outside the guideline range. Therefore, neither of the situations addressed in **Alleyne** and **Apprendi** are implicated.

**Commonwealth v. Buterbaugh**, 91 A.3d 1247, 1270 n.10 (Pa. Super. 2014).

witnesses at trial were liars, and (4) Appellant himself lied on the witness stand during trial. N.T., 4/21/11, at 15-17. The trial record provided ample reason for the prosecutor to make these statements. Both Appellant and Scott were incarcerated as Appellant was awaiting trial in this case. Scott's statement to police, implicating Appellant in the shooting, circulated around the prison, which, Scott explained, potentially put his life in jeopardy. One month before trial, several inmates forced Scott to sign a phony statement purporting to repudiate his allegations against Appellant. N.T., 12/07/10, at 82-85, 96-100. Appellant attempted to corroborate this phony repudiation through defense witness Dexter Newsuan, who testified, *inter alia*, that (1) he watched the shooting; (2) Appellant was not the shooter; and (3) Scott confided to him in prison in October 2009 that he had lied about Appellant being the shooter. In rebuttal, the Commonwealth presented evidence that Newsuan and Scott were incarcerated in different facilities in October 2009, belying Newsuan's testimony about meeting Scott in prison. N.T., 12/8/10, at 115, 158-60; N.T., 12/09/10, at 62-64. Finally, Appellant testified in his own defense and made the dubious assertion that he was with Scott when he heard (but did not see) someone else shoot Scott. N.T., 12/9/10, at 5-9, 14, 24, 29, 57. Given this evidence, the prosecutor was well within his authority when he told the court at sentencing that Appellant attempted to intimidate Scott and to corrupt the judicial process with Newsuan's and his own false testimony.

The prosecutor stated that Appellant had access to weapons while on the run after the shooting. N.T., 4/21/11, at 17. Once again, the trial record supports this statement. The evidence shows that Appellant was driving a stolen Hyundai that belonged to Carol Ann Sucharski. N.T., 12/7/10, at 127-28. The car was stolen several weeks before the shooting, and Philadelphia police recovered the car several weeks after the shooting. *Id.* Inside the car was Appellant's license and BJ's card. N.T., 12/8/10, at 15-16. When the police returned the car to Sucharski, she found a gun in the vehicle that did not belong to her. N.T., 12/7/10, at 127-28. She returned the gun to the police. *Id.* This evidence supports the prosecutor's position that Appellant was on the run after the shooting and had access to at least one weapon during that time. While the prosecutor stated that Appellant had access to "weapon**s**" during this time period, we cannot see how this minor discrepancy prejudiced Appellant.

The prosecutor remarked that it looked like Appellant was living out of a stolen car because he knew he was wanted for the shooting. N.T., 4/21/11, at 18. Sucharski's trial testimony supports this remark. Sucharski testified that when she reacquired her car, "it was junked up. It looked lived in. There was various items, men's and women's clothing, food, trash, identification, specifically, ID with [Appellant's name] on it . . . ." N.T., 12/7/10, at 127. This testimony, combined with the fact that Appellant was not arrested until three

days after the shooting, indicates that he was living in the car during that time.

The prosecutor stated that Appellant's criminal record shows that he is a violent person, since he has a weapons conviction for which he was on probation at the time of the shooting, nine adult arrests with one county sentence, and five juvenile arrests with four adjudications of delinquency and multiple commitments to juvenile facilities. N.T., 4/21/11, at 18-19. Appellant complains that the Commonwealth did not allege or prove this claim during trial. The simple answer is that Appellant's prior criminal record would have been inadmissible during trial, and its introduction likely would have been reversible error. Moreover, the trial court stated that it reviewed Appellant's pre-sentence investigation report prior to sentencing, *id.* at 2, so it would have known about Appellant's criminal history even if the prosecutor had not mentioned it. ***Commonwealth v. Seagraves***, 103 A.3d 839, 842 (Pa. Super. 2014) ("[where] the trial court has the benefit of a pre-sentence report, we presume that the court was aware of relevant information regarding the defendant's character and weighed those considerations along with any mitigating factors").

The prosecutor argued that there were strike marks on both the house to the left and to the right of the house, and one bullet went through the window of the neighbor's house and lodged into the sofa. N.T., 4/21/11, at 14. The record demonstrates that there were strike marks at one residence,

874 North Markoe Street, but not multiple residences. N.T., 12/8/10, at 29-31 (Detective Park's testimony concerning strike marks). There was no evidence that a bullet lodged in a sofa inside a neighbor's residence. Appellant does not explain, however, how the prosecutor's inaccuracies prejudiced him. Nor do we discern any prejudice, since the core evidence clearly establishes that Appellant attempted to murder Scott by shooting him. *Commonwealth v. Rios*, 920 A.2d 790, 808-09 (Pa. 2007) (PCRA petitioner claimed that defense counsel was ineffective for failing to object to prosecutor's argument that lack of shell casing at murder scene indicated calculated execution of conspiracy to murder decedent; although there was no evidence that petitioner or his accomplice removed shell casing from scene, petitioner was not entitled to relief because no prejudice arose from this minor addition to prosecutor's argument).

The prosecutor stated, "And I would gather, although no one fully admitted this," that the dispute between Appellant and Scott "was over drugs." N.T., 4/21/11, at 15. The prosecutor candidly admitted that he had no evidence to support this assertion, and that he was merely drawing an inference as to the cause of the dispute from the circumstances. Since the prosecutor admitted that he was only drawing an inference instead of declaring facts, we see nothing alarming about his argument. More importantly, we cannot see how the prosecutor's statement prejudiced

Appellant, because even if Appellant had a different motive, his heinous crime warranted the lengthy sentence meted out by the court.

Next, Appellant argues that direct appeal counsel failed to raise relevant mitigating factors that warranted a shorter sentence. This argument fails because Appellant fails to identify which mitigating factors direct appeal counsel should have raised. Moreover, (1) as observed above, the trial court reviewed Appellant's pre-sentence investigation, (2) defense counsel argued at length for a standard guidelines sentence, N.T., 4/21/11, at 17-23, and (3) both defense counsel and direct appeal counsel argued that the deadly weapons enhancement should not apply. Given all of these safeguards, and given the heinous nature of Appellant's crime, we have no reason to question the trial court's exercise of discretion in sentencing Appellant to twenty to forty years' imprisonment.

Finally, Appellant argues that the PCRA court erred in failing to hold an evidentiary hearing on Appellant's petition. As the foregoing discussion demonstrates, it is clear from the record that none of Appellant's claims warrant relief. Thus, no evidentiary hearing was necessary.

Order affirmed.

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*


*Date: 5/20/2020*