MEMORANDUM
 

 MeCLURE, District Judge.
 

 BACKGROUND:
 

 On February 21, 1996, petitioner George E. Banks, an inmate at the State Correctional Institution at Greene, initiated this action with the filing of a motion to proceed
 
 in forma pauperis,
 
 for a stay of execution, and for the appointment of counsel. Banks was convicted in 1983 of thirteen counts of murder in the first degree in the Court of Common Pleas of Luzerne County, Pennsylvania. Twelve sentences of death were imposed following the return of the verdicts as to those charges. In addition, Banks was found guilty of one count each of murder in the third degree, attempted murder, aggravated assault, recklessly endangering another person, robbery, and theft of a motor vehicle.
 

 Banks has pursued a direct appeal as well as post-conviction relief.
 
 See Commonwealth v. Banks,
 
 513 Pa. 318, 521 A.2d 1
 
 (“Banks I
 
 ”; affirming verdicts and sentence on direct appeal),
 
 cert. denied,
 
 484 U.S. 873, 108 S.Ct. 211, 98 L.Ed.2d 162 (1987);
 
 Commonwealth v. Banks,
 
 540 Pa. 143, 656 A.2d 467
 
 (“Banks II”;
 
 affirming denial of post-conviction relief), ce
 
 rt. denied,
 
 — U.S. -, 116 S.Ct. 113, 133 L.Ed.2d 65 (1995). On February 15, 1996, Governor Thomas Ridge of Pennsylvania signed a warrant for the execution of Banks during the week of March 3, 1996. This court stayed the execution by Order of Court dated February 22, 1996. We granted leave for Banks to proceed
 
 in forma pauper-is
 
 on March 12, 1996.
 

 Pursuant to Rule 4 of the Rules Governing § 2254 Cases, 28 U.S.C. following § 2254, the court reviewed the petition filed by Banks and the brief in support thereof. On April
 
 *1167
 
 19, 1996, we issued an order in which we stated our conclusion that it does not appear from the face of the petition that Banks is not entitled to relief in this court. Respondents were directed to answer the petition.
 

 The court has since denied a motion by respondents to dismiss the petition as a mixed petition, a motion by petitioner for a stay of proceedings while additional claims were presented to the state courts,
 
 Banks v. Horn,
 
 928 F.Supp. 512 (M.D.Pa.1996), and a motion by petition for judgment on the pleadings. The court also directed respondents to supplement the record by filing transcripts of proceedings in the Court of Common Pleas. The petition now is ripe for disposition.
 

 ISSUES PRESENTED:
 

 In his petition for a writ of habeas corpus, Banks raises the following as grounds for issuance of the writ:
 

 (1) Banks did not make a knowing, intelligent and voluntary waiver of his Sixth Amendment right to counsel before the trial court permitted him to assume control of the presentation of evidence and cross-examination of witnesses;
 

 (2) Banks was not competent to waive his Sixth Amendment right to counsel at that time;
 

 (3) Banks did not make a knowing, intelligent and voluntary waiver of his Fifth Amendment right against s elf-incrimination when the trial court permitted him to assume control of the presentation of evidence and cross-examination of witnesses;
 

 (4) Banks was not competent to waive his Fifth Amendment right against self-incrimination at that time;
 

 (5) Banks was not competent to be tried and sentenced, so that the judgment of the trial court violates the Due Process Clause of the Fourteenth Amendment and the Cruel and Unusual Punishment Clause of the Eighth Amendment;
 

 (6) During the penalty phase, the trial court’s instruction to the jury, the verdict slip, and the jury poll required the
 
 jury
 
 to find unanimously both aggravating and mitigating circumstances in violation of Banks’ Eighth Amendment right against cruel and unusual punishment;
 

 (7) During the sentencing phase, the trial court failed to instruct the jury with respect to life imprisonment without parole in violation of Banks’ Eighth Amendment right against cruel and unusual punishment and Banks’ right to due process under the Fourteenth Amendment;
 

 (8) The lack of uniformity in the death penalty procedures applied in Pennsylvania did not provide a narrowing of discretion in the imposition of a death sentence as required by the Eighth Amendment;
 

 (9) The trial court’s failure to instruct the jury that it could render a verdict of life imprisonment based upon a finding of mercy engendered from the evidence violated the defendant’s Eighth Amendment right against cruel and unusual punishment;
 

 (10) Pennsylvania’s Proportionality Review Statute deprived Banks of his right to due process under the Fourteenth Amendment; and
 

 (11) The trial court’s failure to question, during voir dire, prospective jurors on whether they automatically would impose a death sentence upon a finding of first degree murder deprived Banks of a jury which would consider mitigating evidence during the sentencing phase, in violation of Banks’ right against cruel and unusual punishment under the Eighth Amendment.
 

 In our earlier memorandum, we discussed three of these issues and determined that they had not been exhausted in the state proceedings. Generally, a petition under § 2254 with both exhausted and unexhausted claims must be dismissed. 928 F.Supp. at 514 (citing
 
 Rose v. Lundy,
 
 455 U.S. 509, 510, 102 S.Ct. 1198, 1199, 71 L.Ed.2d 379 (1982)). However, since Banks’ unexhausted claims are proeedurally barred, we concluded that the exhausted claims set forth in the petition should be considered by this court. 928 F.Supp. at 514-515, 521 (citing
 
 Toulson v. Beyer,
 
 987 F.2d 984, 987 (3d Cir.1993)). Consistent with our earlier review of the unexhausted claims, the court will
 
 *1168
 
 not consider the merits of Grounds (7), (9), and (11).
 

 DISCUSSION:
 

 I. STANDARD OF REVIEW
 

 We have previously recited the standard for the issuance of a writ of habeas corpus as follows:
 

 The authority for and limitations upon issuance of a writ of habeas corpus such as that sought by petitioner are set forth in 28 U.S.C. § 2254. A district court may entertain a petition for a writ of habeas corpus filed by a person in state custody “only on the ground that he [or she] is in custody in violation of the Constitution or laws or treaties of the United States.” 28 U.S.C. § 2254(a). Habeas corpus relief may be considered only upon a showing by the petitioner that he or she has exhausted the remedies available in the state courts. 28 U.S.C. § 2254(b). Determinations made by a state court after a hearing on issues of fact are presumed to be correct, with specified exceptions. 28 U.S.C. § 2254(d). The district court may, however, direct expansion of the record with evidence relevant to the court’s determination of the merits of the petition. Rule 7 of the Rules Governing § 2254 Cases in the United States District Courts, 28 U.S.C. following § 2254.
 

 Carpenter v. Vaughn,
 
 888 F.Supp. 635, 643 (M.D.Pa.1994) (footnotes omitted).
 

 One of the footnotes omitted from the paragraph quoted above was a short discussion concerning the development of the law of habeas corpus. At the time § 2254 was enacted, it did not create new law but codified existing authority. Most importantly, we noted, “The evolution of the law of federal habeas corpus continues to be the responsibility of the judiciary.”
 
 Carpenter
 
 at 643 n. 4 (citations omitted).
 

 Recently, the political branches of the government brought that tradition to an end. On April 24, 1996, President Clinton signed into law the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. 104-132, 110 Stat. 1214 (April 24, 1996) (“the Antiterrorism Act”). Title I of the Antiterrorism Act, entitled Habeas Corpus Reform, creates Chapter 154 of Title 28 of the United States Code. Chapter 154 sets forth specific provisions for “death penalty litigation procedures,”
 
 Id.,
 
 § 107. Numerous amendments to existing statutes, including § 2254, also are set forth.
 

 As to Chapter 154, we find that these provisions are inapplicable in this case, since Pennsylvania has not established a “unitary review procedure” as defined in Title I/Chapter 154.
 
 See id.,
 
 § 107(a) (adding 28 U.S.C. § 2265(a) and (b), which define “unitary review procedure,” and §§ 2261 and 2265(e) which make Title I/Chapter 154 applicable to eases in which the state in which the petitioner was convicted has created a “unitary review procedure”). Pennsylvania’s procedure for unitary review in capital cases,
 
 see
 
 42 Pa.Cons.Stat.Ann. §§ 9571 et seq., does not apply for present purposes as it was made applicable to cases in which the death penalty was imposed after January 1, 1996, Act Amending Title 42 (Judiciary and Judicial Procedure) of the Pennsylvania Consolidated Statutes, Pub.L. No. 1995-32 (SSI), § 3(2) (1995), well after Banks’ sentence was imposed. Since it is clear that Pennsylvania did not have a unitary review procedure in place at the time of Banks’ conviction and appeals, we do not reach the question of whether the current Pennsylvania unitary review procedure falls within the term as used in Title 1/Chapter 154.
 

 As relevant, § 2254 as amended by the Antiterrorism Act reads:
 

 (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
 

 (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
 

 (2) resulted in a decision that was based on an unreasonable determination
 
 *1169
 
 of the facts in light of the evidence presented in the State court proceeding.
 

 (e) (1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.
 

 (f) If the applicant challenges the sufficiency of the evidence adduced in such State court proceeding to support the State court’s determination of a factual issue made therein, the applicant, if able, shall produce that part of the record pertinent to a determination of the sufficiency of the evidence to support such determination. If the applicant, because of indigency [sic] or other reason is unable to produce such part of the record, then the State shall produce such part of the record and the Federal court shall direct the State to do so by order directed to an appropriate State official. If the State cannot provide such pertinent part of the record, then the court shall determine under the existing facts and circumstances what weight shall be given to the State court’s factual determination.
 

 28 U.S.C. § 2554(d)-(f), as amended by Pub.L. 104-132, § 104.
 

 The first question which arises is which standard of review governs the petition filed by Banks, i.e. whether the amended version of § 2254 applies to cases pending on the date of its enactment. If so, the court would be required to apply the more deferential standard to the state courts’ factual findings.
 

 There is a split in authority on the retroactive application of the standard of review provisions of the new amendments.
 
 Compare Boria v. Keane,
 
 90 F.3d 36 (2d Cir.1996) (standard of review provisions are not applied to pending cases);
 
 Austin v. Bell,
 
 927 F.Supp. 1058, 1062 (M.D.Tenn.1996) (new provisions do not apply when habeas proceedings have progressed to stage of evidentiary hearing),
 
 with Leavitt v. Arave,
 
 927 F.Supp. 394 (D.Idaho) (new provisions apply to pending cases, based on interaction of new provisions with Chapter 154, which specifies that it applies to pending cases, and because of presumption of application to pending cases seeking prospective relief). In a recent case, the Third Circuit declined to address this issue because disposition of the case before it would not differ, regardless of which standard was applied.
 
 Dickerson v. Vaughn,
 
 90 F.3d 87, 90 (3d Cir.1996). Based on
 
 Dickerson,
 
 if no factual matters arise which require the application of the new standard of proof, or if no rule of law is applicable which may not be “clearly established,” then resolution of the issue of which standard applies is unnecessary.
 

 II. STATEMENT OF FACTS
 

 The issues raised by Banks generally relate to legal issues, particularly with respect to the information presented or not presented to the jury. Although Banks himself disputed the facts as presented by the prosecution, the facts could not seriously be questioned. Instead, counsel for Banks relied on a defense of insanity or diminished capacity. Based on overwhelming eyewitness and ballistics testimony, there can be no doubt that Banks shot fourteen people, killing thirteen. The question was Banks’ mental condition at the time.
 

 Because the facts are recited at length in the first opinion of the Supreme Court of Pennsylvania,
 
 Banks I
 
 521 A.2d at 4r-6, only a summary will be set forth here. The use of names, of which there are many, is limited because of the potential to confuse the reader.
 

 On the evening of September 24, 1982, Banks attended a birthday party in Wilkes-Barre. He was accompanied to the party by two girlfriends, and a third girlfriend was in attendance as well. Banks was at the party from approximately 9:00 until about 10:30 p.m. Between midnight and 1:00 a.m. of September 25, 1982, Banks called the location of the party and spoke to one of his girlfriends, Dorothy Lyons. Lyons was visibly upset by the call and left the party, accompanied by the last of Banks’ girlfriends still in attendance. She took with her an
 
 *1170
 
 AR-15 rifle belonging to Banks, apparently at Banks’ request. The Colt AR-15 rifle is a military style, semi-automatic weapon, a civilian version of the M-16 used by American servicemen.
 

 Shortly after 1:00 a.m., Banks was seen at a complex in which Lyons had an apartment. He was carrying a bag containing several small boxes, and commented to the witness who saw him that he (the witness) should not surprise people because he might get shot.
 

 Banks was next seen on Schoolhouse Lane in Wilkes-Barre by a group of young people on the street. (Although referred to as “teenagers” in
 
 Banks I,
 
 only one of the members of this group can have been a teenager at the time of the shootings. The two victims were aged 23 and 24, and a woman who was not shot was 21 at the time of trial. The remaining person present (a man) was 20 at the time of trial.) Banks owned a home at 28 Schoolhouse Lane in which noises like gunshots were heard by the youths at about 2:00 a.m. Banks appeared on the street wearing coveralls which witnesses consistently described as appearing to be of a military appearance. One of the youths stated that he knew Banks, to which Banks responded that he was “not going to live to tell anybody about this,” and shot two of the youths. One of them survived but the other was pronounced dead later that morning.
 

 When police were summoned to the scene, they called for an ambulance. Also, they were told about the sound of gunfire from 28 Schoolhouse Lane and went there to investigate. Inside they found the lifeless bodies of the three girlfriends of Banks who had been at the party as well as their five children, four of whom were fathered by Banks. All had gunshot wounds.
 

 Banks was next seen in the vicinity of a lounge called the Cabaret. Two men were in their ears talking when Banks approached, in the same outfit, and pointed the AR-15 at the head of one of the men. Banks demanded that the man move over and got into the ear. Banks let the owner out after a short distance but left with the car.
 

 At about 2:30 a.m. shots were heard at the Heather Highlands Trailer Park in Jenkins Township, Luzerne County. Two boys present in one of the trailers described how Banks entered the trailer and grabbed Sharon Mazzillo (another girlfriend) with one arm while holding the AR-15 in the other. Banks said something like, “I shot some of my family, now I’m going to shoot some of yours.” He then shot his son by Sharon, Kissmayu Banks, who was asleep on the couch. Sharon and her mother, Alice Mazzillo, then tried to push Banks out of the trailer, and Alice went to the bedroom to call police. Banks shot Sharon as she tried to run out the door of the trailer. Banks next choked, shot and kicked Scott Mazzillo, then struck him with the butt of the rifle. Finally, Banks shot Alice and left. One of the two boys left alive by Banks lifted the phone from Alice’s body and completed the call to the police.
 

 Banks later was tracked to his mother’s home, but left before police arrived. Eventually, Banks was located in the home of a friend, having barricaded himself inside. Police surrounded the house but did not enter since Banks still had the AR-15 and was suspected of having hand grenades. Police tried to convince Banks that his children were still alive and needed his help. After more than four hours, Banks was talked out of the house and taken into custody. He made numerous statements admitting to the shootings.
 

 Explaining conduct like that of Banks probably can never be done adequately. At trial, the Commonwealth took the position that Banks was motivated by a fear that he was losing control over his “family.” Defense counsel presented psychiatric experts who testified that Banks suffered from paranoid psychosis. Succinctly stated, the experts testified that Banks, who is bi-racial, believed that he was the victim of a racist conspiracy. There was evidence also that Banks had made statements to the effect that he did not want his children to grow up in a racist world, and killed them to save them from suffering the effects of racism as Banks had.
 

 III. COMPETENCY
 

 Grounds (2) and (4) relate to Banks’ competency to participate in his own representa
 
 *1171
 
 tíon and to testify at trial. The trial judge held a hearing to determine Banks’ competency to stand trial on March 14 and 15, 1983, with oral argument following the presentation of evidence. N.T. competency hearing (March 14-15, 1983) (fifth transcript of record document no. 36). The Commonwealth presented the testimony of Robert L. Sadoff, M.D., to counter the testimony of Michael K. Spodak, M.D. Dr. Sadoff testified for the Commonwealth at a second hearing on May 6, 1983, rebutting the testimony of DeWitt Weatherly, M.D. N.T. competency hearing (May 6, 1983) (sixth transcript of record document no. 36). There can be no question that the trial court had a sufficient basis for finding that Banks was competent to stand trial at the time of the hearings, and Banks does not argue error in that finding.
 

 Instead, Banks argues that he “decompensated” as the time of trial approached, and during the trial. That is, even if he was competent in March and May of 1983, he was not competent by June of 1983. The first issue is whether a trial court must hold a separate competency hearing during trial once it determines that the defendant is competent to stand trial. The issue arises because Banks contends that he cannot have made a knowing, intelligent and voluntary waiver of his right to counsel and against self-incrimination if he was not competent.
 

 A criminal defendant’s mental competency is a factual matter entitled to the presumption of correctness, and a state court’s finding of competency is binding on a federal court unless the state court record does not support the finding.
 
 Demosthenes v. Baal,
 
 495 U.S. 731, 110 S.Ct. 2223, 109 L.Ed.2d 762 (1990). Absent evidence of a substantial change in the defendant’s condition, there is no constitutional requirement of a second or successive hearing to determine mental competency.
 
 Senna v. Patrissi,
 
 5 F.3d 18, 20 (2d Cir.1993).
 
 See also Drope v. Missouri,
 
 420 U.S. 162, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975) (necessity of determining competency continues throughout trial, so that trial court was required to conduct a competency hearing when there were “circumstances suggesting a change that would render the accused unable to meet the standards of competence to stand trial”).
 

 The test for competency to stand trial is whether the defendant has the ability to consult with counsel to a reasonable degree of rational certainty and whether the defendant has a rational and factual understanding of the proceedings.
 
 Dusky v. United States,
 
 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960);
 
 McFadden v. United States,
 
 814 F.2d 144, 146 (3d Cir.1987).
 
 See also
 
 18 U.S.C. § 4243(a). This test is consistent with Pennsylvania law under which “a person is incompetent to stand trial where he is ‘substantially unable to understand the nature or object of the proceedings against him or to participate and assist in his defense.’ ”
 
 Banks I
 
 at 12 (quoting 50 Pa.Stat.Ann. § 7402(a)).
 

 As noted, the trial court made a pre-trial determination that Banks was mentally competent to stand trial. The court continued to observe Banks for signs that his condition with respect to competency had changed.
 
 See, e.g.,
 
 N.T. trial vol. 2 at 454-455 (June 8, 1983) (noting that questioning by and demeanor of Banks established competency); vol. 5 at 1,645 (June 16, 1983) (noting that trial court had seen nothing to warrant change of mind with respect to competency determination);
 
 Banks I
 
 at 13 (reciting factual finding of trial court as to Banks’ demeanor and participation as related to competency, also set forth in present record in Respondents’ Appendix A (record document no. 33, Opinion dated October 17,1985, at 15 n. 2)). Banks asked meaningful, at times very insightful, questions of witnesses.
 
 See, e.g.,
 
 N.T. trial vol. 2 at 888-889 (June 9,1983) (eliciting testimony of firearms/ballistics expert that it was unlikely that ammunition from weapon used would be found in body because of its velocity, despite fact that fragments were found in the body). It also should be noted, as pointed out by Banks, that defense counsel repeatedly reminded the trial court of its duty to consider Banks’ competency through a number of motions to suspend proceedings for another competency hearing.
 

 Based on the foregoing, it is clear that the trial court remained mindful of its responsibility with respect to the determination of
 
 *1172
 
 competency, and determined that Banks was mentally competent to stand trial.
 

 The only evidence of a change in the mental condition of Banks during the course of the trial to which he points is the testimony of Park E. Dietz, M.D., a psychiatrist called by the Commonwealth on the issue of Banks’ sanity at the time of the offenses. N.T. trial vol. 5 at 1,800-1,888; 1,890-1,932 (June 17, 1983). Specifically, Dr. Dietz testified on direct examination, in part, as follows:
 

 ... I had the opportunity to observe Mr. Banks testify yesterday, and his testimony shows that he has paranoia, to me.
 

 I recognized, in his testimony, every one of the symptoms of his disease that has been discussed in the testimony I’ve heard. Yesterday Mr. Banks showed delusions and psychotic thought, which is really the symptom of this illness. And so, yesterday, I was able to observe that.
 

 He’s been said to be on a deteriorating course, getting worse with this illness. Dr. Spodak testified, in a hearing that I attended last February 28, that Mr. Banks was deteriorating rapidly. And there’s been testimony since then that Mr. Banks is deteriorating. Given that and given the fact that he’s been psychotic since he was in prison, I think yesterday I had a chance to see him at his worst and to see all the symptoms that Mr. Banks shows when he is at his sickest.
 

 Id.
 
 at 1,828. Dr. Dietz added later in his testimony on direct examination:
 

 Now, Mr. Banks was described by Dr. Turchetti as being more floridly psychotic in February than he had been back in October, at the original interviews, and I think that significant, because I’ve indicated to you that Mr. Batiks seems to be worse now than he was in the past; that his behavior on the witness stand is, by all accounts, more seriously disordered than his behavior before the shootings and, in my opinion, at the time of the shootings, so the disorder, according to Dr. Turchetti, was worse in February than in October.
 

 Id.
 
 at 1835.
 

 This testimony is consistent with all of the psychiatric testimony on the issue of whether Banks suffered from a mental disease or defect. That is, all of the psychiatrists agreed that Banks suffered from paranoia or paranoid psychosis, which is distinguishable from paranoid personality and paranoid schizophrenia. In the current version of the standard text on mental disorders, the disease described by the psychiatrists appears to be a “delusional disorder,” subclassified as a “persecutory type.”
 
 Diagnostic and Statistical Manual of Mental Disorders
 
 296-298 (4th ed.1994). Dr. Weatherly cited an earlier version in his testimony. N.T. competency hearing at 10 (May 6, 1983) (citing
 
 Diagnostic and Statistical Manual Three,
 
 or third edition, and diagnosing as “numerically number 297.10”).
 

 The differences in the testimony appear in the opinions of the psychiatrists with respect to the impact of the disease on Banks’ cognitive abilities. During trial, the psychiatrists called by the defense opined that, as a result of the paranoia, Banks was unable to understand the nature and consequences of his actions or to distinguish right from wrong at the time of the offenses, while the Commonwealth’s psychiatrists reached the opposite conclusion (despite accepting the existence of the disease). In other words, the testimony was in conflict as to the effect of the disease on Banks’ cognitive functions.
 
 See esp.
 
 N.T. trial vol. 5 at 1,828 (June 17,1983) (testimony of Dr. Dietz that “... as for the effect on thinking, on judgment, on other areas of mental life, paranoia doesn’t have an effect on those areas of mental life”). Moreover, Dr. Sadoff testified during the pre-trial competency hearing that Banks’ paranoia did not render him incompetent to stand trial. N.T. competency hearing at 198 (March 15, 1983).
 

 There are, then, two problems with Banks’ argument that the testimony of Dr. Dietz required the trial court to suspend the trial and conduct a full-blown competency hearing. First, Dr. Dietz was not testifying that Banks actually was deteriorating or decompensating; he was assuming as much based on previous testimony. Second, there is not necessarily a link between the disorder and mental competency to stand trial; in fact, the trial court had rejected such a link, supported by Dr. Sadoffs testimony, when it
 
 *1173
 
 found Banks competent after the original hearing. Considering this evidence and accepting as true Banks’ contention that his paranoia grew worse as trial approached and during trial, it does not follow that Banks was not competent.
 

 We conclude that: (1) the trial court fulfilled its ongoing, constitutional obligation to ensure that Banks was competent to stand trial; (2) the trial court’s determination that Banks was competent is supported by the record; and (3) the equivocal nature of the evidence on which Banks relies, weighed against the evidence of the ongoing observation of Banks by the trial court, makes the testimony of Dr. Dietz insufficient to rebut the presumption that the determination of competency was correct. In the language of
 
 Drope,
 
 there are no “circumstances suggesting a change that would render the accused unable to meet the standards of competence to stand trial.” Based on this conclusion, we find that grounds (2) and (4) of Banks’ petition do not warrant habeas relief.
 

 IF.
 
 WAIVER OF RIGHT TO COUNSEL
 

 Banks next argues that he did not make a knowing and voluntary waiver of the right to counsel before “assuming stewardship” over his defense. Actually, Banks never waived his right to counsel and continued to be represented by counsel throughout all of the proceedings in state court, including the appeals. Banks’ participation consisted of personally cross-examining the ballistics expert as described above, testifying in his own defense, and directing counsel as to the subject matter of questions on cross-examination of the coroner and deputy coroners during presentation of the Commonwealth’s rebuttal evidence. During his own testimony, Banks introduced into evidence photographs which the court had excluded from the Commonwealth’s case in chief.
 

 A review of the trial transcripts shows that, contrary to Banks’ assertion, he did not “assume stewardship” over the entirety of his defense. The cross-examination and testimony he conducted and presented were in addition to, not to the exclusion of, the defense presented by counsel. Allowing this type of hybrid representation is within the discretion of the trial court.
 
 United States v. Treff,
 
 924 F.2d 975, 979 n. 6 (10th Cir.),
 
 cert. denied,
 
 500 U.S. 958, 111 S.Ct. 2272, 114 L.Ed.2d 723 (1991). A request by a defendant to proceed with hybrid representation is not an election to proceed
 
 pro se. Id. See also Hakeem v. Beyer,
 
 990 F.2d 750, 765 (3d Cir.1993) (“Generally speaking, we will not equate disagreements between a defendant and appointed counsel with
 
 pro se
 
 status”). Since Banks was not proceeding
 
 pro se,
 
 i.e. not waiving his right to counsel, there was no requirement for a colloquy to determine whether any waiver was knowing and voluntary. Moreover, since the trial court determined that Banks was competent, we see no error of constitutional moment or abuse of discretion in permitting Banks to participate in the presentation of his own defense.
 

 The absence of a colloquy as to the waiver of the right to the effective assistance of counsel does not warrant issuance of a petition for a writ of habeas corpus.
 

 F.
 
 WAIVER OF RIGHT AGAINST SELF-INCRIMINATION
 

 Banks contends that he did not make a knowing and voluntary waiver of his right against self-incrimination when he testified, cross-examined witnesses, and presented evidence. The basis for this argument is his lack of competence to stand trial, which would translate to a lack of competence to waive the right against self-incrimination. Since we have determined that there is no error in the competency determination, the claim fails. Further, the trial court did warn Banks, on the record, with respect to his decision to testify. N.T. trial vol. 5 at 1,638-1,642 (June 16,1983).
 

 It should be noted as well that the Fifth Amendment would not apply to the introduction of the photographs of the victims, since they are not testimonial in nature.
 

 FI.
 
 COMPETENCY FOR TRIAL AND SENTENCING
 

 Banks argues that he was not competent for purposes of either trial or sentencing, so that the proceedings against him violated the
 
 *1174
 
 Eighth Amendment and the Fourteenth Amendment. This argument fails for the reasons discussed with respect to the trial court’s determination of Banks’ competency.
 

 VII. CHARGE AND VERDICT FORM
 

 Banks next contends that, in the sentencing phase of the trial, the instructions to the jury, the verdict slip, and the jury poll impermissibly suggested that the jury was required to be unanimous in finding the existence of a mitigating factor to be weighed against any aggravating factor found (again unanimously) by the jury. The requirement of jury unanimity under these circumstances would violate the rule of
 
 Mills v. Maryland,
 
 486 U.S. 367, 108 S.Ct. 1860, 100 L.Ed.2d 384 (1988).
 

 The Commonwealth cites a number of opinions of the Supreme Court of Pennsylvania to the effect that the jury instructions at issue, or very like them, do not contravene the rule of
 
 Mills. See Commonwealth v. Marshall,
 
 534 Pa. 488, 633 A2d 1100, 1111 (1993);
 
 Commonwealth v. Hackett,
 
 534 Pa. 210, 627 A2d 719, 725-726 (1993);
 
 Commonwealth v. Tilley,
 
 528 Pa. 125, 595 A2d 575, 585-586 (1991);
 
 Commonwealth v. O’Shea,
 
 523 Pa. 384, 567 A2d 1023, 1035-1036 (1989),
 
 cert. denied,
 
 498 U.S. 881, 111 S.Ct. 225, 112 L.Ed.2d 180 (1990). More useful for present purposes, since it is binding on this court, is
 
 Zettlemoyer v. Fulcomer,
 
 923 F.2d 284, 306-309 (3d Cir.),
 
 reh’g denied, cert. denied,
 
 502 U.S. 902, 112 S.Ct. 280, 116 L.Ed.2d 232
 
 reh’g denied,
 
 502 U.S. 1000, 112 S.Ct. 624, 116 L.Ed.2d 646 (1991).
 

 A review of the record of the sentencing phase of Banks’ trial, N.T. trial volume 6 at 2,315-2,327 (June 22, 1983); Verdict Form, Respondents’ Appendix C (record document no. 33), shows that the charge and verdict form are not substantially different from those considered in
 
 Zettlemoyer.
 
 They state repeatedly that the jury must find unanimously at least one aggravating circumstance beyond a reasonable doubt and that any aggravating circumstances so found must outweigh any mitigating circumstances (to be found by a preponderance of the evidence). They also state that the final verdict must be unanimous. Nowhere is there a statement that any mitigating circumstances must be found unanimously by the jury before they could be weighed against any aggravating circumstances.
 

 Based on
 
 Zettlemoyer,
 
 we find that the charge and verdict slip in this ease are consistent with
 
 Mills. See also DeShields v. Snyder,
 
 829 F.Supp. 676, 688 (D.Del.1993) (reaching same conclusion with respect to similar jury instruction).
 

 VIII. LACK OF UNIFORMITY
 

 Banks contends that a lack of uniformity in the sentencing procedures for capital cases in Pennsylvania at the time of his trial renders his sentence invalid. Banks points to no specific constitutional error to support this contention. In fact, of the five errors listed by Banks (all referring to Pennsylvania law), he only contends that one of them occurred in his case. With respect to that one error, being notice of the aggravating factors to be argued by the Commonwealth only after the verdicts of guilty were returned, Banks does not allege insufficient notice. Nor does it appear from the record that Banks was unable to respond to the factors submitted by the Commonwealth. This was especially so since all of the supporting evidence was introduced during the guilt phase of trial, and the sentencing phase consisted of arguments by counsel and the court’s charge. There was no new evidence to require investigation or other preparation.
 

 Potential problems, especially problems of state procedure, in other cases do not render the verdict and sentence in Banks’ case unconstitutional.
 

 IX. PROPORTIONALITY REVIEW
 

 Finally, Banks contends that the system of proportionality review employed by the Supreme Court of Pennsylvania with respect to capital cases denied him his right to due process under the Fourteenth Amendment. The argument fails for several reasons.
 

 First, proportionality review is not mandated under the Constitution.
 
 Pulley v. Harris,
 
 465 U.S. 37, 104 S.Ct. 871, 79 L.Ed.2d 29 (1984).
 

 
 *1175
 
 Second, Banks’ argument is premised in part on the fact that a procedure for proportionality review of capital sentences is not set forth in the statute governing such review, 42 Pa.Cons.Stat.Ann. § 9711(h)(3)(iii), the Pennsylvania Rules of Criminal Procedure, or the Pennsylvania Rules of Appellate Procedure. However, as the Supreme Court of Pennsylvania pointed out in its review of the denial of post-conviction relief, the manner in which proportionality review is conducted is set forth in an order of the Supreme Court.
 
 Banks II
 
 at 474 (quoting
 
 Commonwealth v. DeHart,
 
 512 Pa. 235, 516 A.2d 656, 669 (1986),
 
 cert. denied,
 
 483 U.S. 1010, 107 S.Ct. 3241, 97 L.Ed.2d 746 (1987),
 
 remanded on other grounds,
 
 539 Pa. 5, 650 A.2d 38 (1994)).
 
 See also Commonwealth v. Frey,
 
 504 Pa. 428, 475 A.2d 700, 707-708 (setting forth procedure), ce
 
 rt. denied,
 
 469 U.S. 963, 105 S.Ct. 360, 83 L.Ed.2d 296 (1984), and
 
 Frey
 
 at 712-713, Appendix (form for compiling data for proportionality review). The statute therefore does not stand in isolation, and there is a procedure in place under Pennsylvania law for proportionality review.
 

 Banks adds that there is no manner for challenging the “evidence” relied upon in proportionality review. Actually, Banks raised his argument in the context of a petition for post-conviction relief, and it was considered on the merits by the Supreme Court. The fact of the matter is that the data compiled by the Administrative Office of Pennsylvania Courts is available, and Banks “has failed to point to any actual deficiencies and/or inaccuracies in the relevant information supplied by the AOPC.”
 
 Banks II
 
 at 474.
 

 In other words, Banks chose to argue- the theory that
 
 if
 
 a deficiency or inaccuracy existed, he had no way to correct it, yet pointed to absolutely no deficiencies or inaccuracies. A theoretical deprivation is not a basis for habeas relief. Moreover, the opinion indicates that such a challenge may be made in the context of a petition for post-conviction relief.
 

 In
 
 Harris ex rel. Ramseyer v. Blodgett,
 
 853 F.Supp. 1239, 1290-1291 (W.D.Wash. 1994),
 
 ajfd,
 
 64 F.3d 1432 (9th Cir.1995) (affirming on other grounds), the district court found that the State of Washington’s procedure for proportionality review of capital sentences was constitutionally defective because (1) there was inadequate notice of the procedures to be followed, and (2) there was inadequate notice of the state courts’ definition or interpretation of “similar cases.”
 

 It is true that, despite the fact that proportionality review is not constitutionally mandated, if state law provides for such review, due process standards apply.
 
 Foster v. Delo,
 
 39 F.3d 873, 882 (8th Cir. 1994) (en banc),
 
 cert. denied,
 
 — U.S. -, 115 S.Ct. 1719, 131 L.Ed.2d 578 (1995). However, when state law furnishes sufficient guidance to the sentencer, there is a presumption that the sentence was not “wantonly and freakishly imposed,” and a federal court does not review the conclusion of the state’s highest court so long as the proportionality review was undertaken in good faith.
 
 Walton v. Arizona,
 
 497 U.S. 639, 655-656, 110 S.Ct. 3047, 3057-58, 111 L.Ed.2d 511 (citations, internal quotations omitted),
 
 reh’g denied,
 
 497 U.S. 1050, 111 S.Ct. 14, 111 L.Ed.2d 828 (1990). In this case, the Supreme Court of Pennsylvania clearly undertook the proportionality review in good faith.
 
 See Banks II
 
 at 474.
 

 To this we would add that, unlike the court in
 
 Harris,
 
 we do not think that state law must further clarify the phrase “similar cases.” The phrase is ordinary English, not a term of art, and no further clarification is necessary to satisfy the Due Process Clause. The Supreme Court of the United States used the phrase as such.
 
 See Walton
 
 at 656
 
 (“...
 
 sentence was proportional to the sentences imposed in cases similar to his”).
 

 Finally, Banks argues that the Supreme Court of Pennsylvania has never found that a sentence of death was disproportionate in its review scheme. Whether that court has done so is immaterial. Banks would need to show that in eases similar to his, the death penalty is not normally imposed. He has not demonstrated such.
 

 We find no constitutional infirmity in the Pennsylvania system of proportionality review of capital sentences.
 

 
 *1176
 

 X. STAY
 

 The final issue to be resolved by the court is the stay of execution, which remains in effect. Under Local Appellate Rule 111.3(b), this court must certify whether there is probable cause for an appeal of a final decision on a claim seeking relief under § 2254. If we so certify, we are required to grant a stay pending disposition of the appeal.
 

 In this case, we declined to dismiss the petition as mixed because the unexhausted claims were proeedurally barred. While most of the claims raised by Banks do not seem to be particularly close issues, those issues related to the procedural bar at least are sufficiently close for a certificate of probable cause. We therefore shall so certify, and the stay currently in effect will be extended until final disposition of any appeal or until the time for filing such an appeal expires, if no notice of appeal is filed.
 

 XI. CONCLUSION
 

 Banks has failed to show that he is entitled to relief in the form of a writ of habeas corpus. We do not reach the question of which version of § 2254 applies because this conclusion is the same under former § 2254 or as amended by the Antiterrorism Act. There being no issues of fact for which an evidentiary hearing is necessary or appropriate, the petition for a writ of habeas corpus will be denied without such a hearing.
 

 An appropriate order will issue.
 

 ORDER
 

 For the reasons stated in the accompanying memorandum, IT IS ORDERED THAT:
 

 1. Petitioner George E. Banks’ petition (record document no. 8) for a writ of habeas corpus is denied.
 

 2. Pursuant to Third Circuit Local Appellate Rule 111.3(b), we certify that there is probable cause for appeal of petitioner’s amended petition for a writ of habeas corpus.
 

 3. Our stay of execution (record document no. 4), originally issued February 22, 1996, shall remain in full force and effect pending disposition of any appeal, pursuant to Local Appellate Rule 111.3(b).
 

 4. If no notice of appeal is filed, the stay of execution shall expire with the time period permitted for the filing of a notice of appeal.
 

 5. The clerk is directed to close the file.