

1997 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

9-19-1997

# Banks v. Horn

Precedential or Non-Precedential:

Docket
96-9003

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1997

Recommended Citation
"Banks v. Horn" (1997). *1997 Decisions.* Paper 224.
http://digitalcommons.law.villanova.edu/thirdcircuit_1997/224

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1997 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed September 19, 1997

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 96-9003

GEORGE E. BANKS,

     Appellant

v.

MARTIN HORN, Commissioner, PA Department of
Corrections; JAMES PRICE, Superintendent of the State
Correctional Institution at Greene; JOSEPH P.
MAZURKIEWICZ, Superintendent of the State Correctional
Institution at Rockview; THE COMMONWEALTH OF
PENNSYLVANIA

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civ. No. 96-00294)

Argued August 12, 1997

BEFORE: SLOVITER, Chief Judge, and GREENBERG and
MCKEE, Circuit Judges

(Filed: September 19, 1997)

     Albert J. Flora, Jr. (argued)
     William Ruzzo
     Office of Public Defender
     Luzerne County Courthouse
     Wilkes-Barre, PA 18711

      Attorneys for Appellant



     Peter P. Olszewski, Jr. (argued)
     Scott C. Gartley
     Office of District Attorney
     Luzerne County Courthouse
     200 North River Street
     Wilkes-Barre, PA 18711

      Attorneys for Appellees

OPINION OF THE COURT

GREENBERG, Circuit Judge.

I. INTRODUCTION

George E. Banks appeals to this court from a final
judgment entered in the district court on August 30, 1996,
denying his petition for a writ of habeas corpus under 28
U.S.C. S 2254. Banks committed the crimes leading to his
conviction and sentencing in the state court and finally to
his petition for habeas corpus on September 25, 1982,
when he shot 14 people in Wilkes-Barre, Pennsylvania,
killing 13 of them. The victims included Banks' four
girlfriends and their children, most of whom were Banks'
children as well. Banks, who was born from an interracial
relationship, apparently committed the murders because he
preferred his children to die rather than grow up in what he
thought was a racist world. See Commonwealth v. Banks,
521 A.2d 1, 4-7 (Pa. 1987) ("Banks I").

Prior to trial in the Luzerne County Court of Common
Pleas, Banks' attorney raised issues with respect to Banks'
competency to stand trial. Accordingly, the common pleas
court held several pre-trial competency hearings pursuant
to the Pennsylvania Mental Health Procedures Act of 1976,
Pa. Stat. Ann. tit. 50 SS 7402-7403 (West Supp. 1986), each
time concluding that Banks was competent to stand trial.
In addition, during the trial, Banks' attorney made several
unsuccessful motions seeking competency determinations.

During the trial, Banks' attorney attempted to establish
that Banks was legally insane at the time of the offenses,

2

or, alternatively, that his capacity was diminished by
alcohol and pills, thereby precluding a finding offirst
degree murder. Against the advice of counsel, Banks
testified and offered a defense that the police, the Wilkes-
Barre mayor, and the district attorney were conspiring
against him. Banks also cross-examined a ballistic expert,
and directed counsel with respect to questions for cross-
examination of several of the Commonwealth's witnesses.

On June 21, 1983, the jury convicted Banks of 12 counts
of first degree murder, as well as of third degree murder,
attempted murder, and other related counts. The next day
the jury voted to impose the death penalty. Accordingly, the
court sentenced Banks to 12 "consecutive" death sentences
and various consecutive terms of imprisonment.

Banks filed an appeal, and the Pennsylvania Supreme
Court affirmed his convictions and sentences in Banks I.

The court upheld the trial court's determination that Banks was competent to stand trial, found that there was ample evidence that Banks had the requisite intent to kill his victims, and resolved the remaining issues on appeal against Banks. Chief Justice Nix and Justice Zappala dissented on the ground that the common pleas court made the trial a mockery of justice by allowing Banks to take over his own defense.

In February 1989 Banks filed a petition in the common pleas court under the Pennsylvania Post Conviction Hearing Act ("PCHA"), 42 Pa. Cons. Stat. S 9541 et seq. (West 1982), seeking relief from the judgment of conviction and sentence. The Pennsylvania courts treated this petition as if filed under the Post Conviction Relief Act ("PCRA"), 42 Pa. Cons. Stat. S 9541 (West Supp. 1997), which had replaced the PCHA. See Commonwealth v. Banks, 656 A.2d 467, 469 n.4 (Pa. 1995) ("Banks II"). The common pleas court denied him relief, and on appeal, the Pennsylvania Supreme Court, finding all his claims meritless, affirmed in Banks II.

On February 21, 1996, after Governor Ridge signed a warrant for his execution, Banks filed a motion in the district court seeking leave to proceed in forma pauperis, a motion to stay the execution, and a motion for appointment of counsel. The district court granted the motion to proceed

in forma pauperis stayed the execution, provided for the appointment of counsel, and directed Banks to file a habeas petition by March 22, 1996. Banks v. Horn, 928 F. Supp. 512, 514 (M.D. Pa. 1996) ("Banks III"). Banks then filed a petition raising the following claims:

> 1. He did not make a knowing, intelligent and voluntary waiver of his Sixth Amendment right to counsel before the trial court allowed him to assume control of the presentation of evidence and cross-examination of witnesses;
>
> 2. He was not competent to waive his right to counsel;
>
> 3. He did not make a knowing, intelligent and voluntary waiver of his Fifth Amendment right against self-incrimination before the trial court allowed him to assume control of the presentation of evidence and cross-examination of witnesses;
>
> 4. He was not competent to waive his Fifth Amendment right against self-incrimination;

5. He was not competent to be tried and sentenced; therefore, the trial court's judgment violated the Due Process Clause of the Fourteenth Amendment and the Cruel and Unusual Punishment Clause of the Eighth Amendment;

6. During the penalty phase of the trial the court's instructions to the jury, the verdict slip, and the jury poll all required the jury to find unanimously both aggravating and mitigating circumstances in violation of the Eighth Amendment;

7. The trial court's failure in the capital sentencing part of the trial to instruct the jury on life imprisonment without parole violated the holding in Simmons v. South Carolina, 512 U.S. 154, 114 S.Ct. 2187 (1994), that the Eighth Amendment required such an instruction;

8. The lack of uniformity in death penalty procedures in Pennsylvania did not provide a narrowing of discretion in the imposition of a death sentence as the Eighth Amendment requires;

4

9. The trial court's failure to instruct the jury that it could render a verdict of life imprisonment based on a finding of mercy violated the Eighth Amendment as applied in California v. Brown, 479 U.S. 538, 107 S.Ct. 837 (1987);

10. Pennsylvania's Proportionality Review Statute deprived Banks of his right to due process under the Fourteenth Amendment;

11. The trial court's failure to voir dire prospective jurors on whether they automatically would impose death on a finding of first degree murder was in violation of Morgan v. Illinois, 504 U.S. 719, 112 S.Ct. 2222 (1992).

Banks v. Horn, 939 F. Supp. 1165, 1166 (M.D. Pa. 1996) ("Banks IV").

Banks recognized that his habeas corpus petition faced a procedural hurdle because he had not raised claims 7, 9, and 11 in the state courts. Consequently, he filed a motion to remand the petition to the state courts and to stay the proceedings in the district court pending exhaustion of claims 7, 9, and 11 in the state courts. See Banks III, 928 F. Supp. at 514. The Commonwealth opposed the motion

and urged the district court to dismiss the petition as mixed under Rose v. Lundy, 455 U.S. 509, 102 S.Ct. 1198 (1982), because it included both exhausted and unexhausted claims. By order of April 29, 1996, the district court denied Banks' motion because in its view the adoption in 1995 of the Capital Unitary Review Act, 42 Pa. Cons. Stat. Ann. S 9570 et seq. (West Supp. 1997), which limited death penalty appeals to one "unitary" direct appeal of all issues, barred further review of Banks' case in the state courts. See Banks III, 928 F. Supp. at 514. The Commonwealth then filed a motion for reconsideration on the ground that the Capital Unitary Review Act does not apply to cases in which the death penalty was imposed before January 1, 1996.

The district court agreed with the Commonwealth's contention. It concluded, however, that in Pennsylvania "an issue is waived for purposes of post conviction relief if the petitioner failed to raise the issue and it could have been

5

raised before trial, at trial, on direct appeal, or in prior collateral proceedings. 42 Pa. Cons. Ann.S 9544(b) [(West Supp. 1997)]." Banks III, 928 F. Supp. at 515. The court then indicated that second or subsequent petitions for post conviction relief will not be entertained in Pennsylvania unless the petitioner makes a strong prima facie showing that a miscarriage of justice may have occurred. There is a miscarriage of justice if the proceedings resulting in conviction were so unfair that no civilized society could tolerate them or if the defendant was actually innocent of the crimes charged. Id.

The court found the innocence prong inapplicable to the unexhausted claims and interpreted the other prong as referring to errors which undermine the truth-determining process. The court concluded from its analysis of Pennsylvania cases addressing similar claims that a Pennsylvania court would not find that the allegations in any of the unexhausted claims set forth circumstances amounting to a miscarriage of justice. Id. at 518-21. Therefore, the district court held that state law clearly foreclosed review by the state courts of the unexhausted claims which thus were procedurally barred. Id. at 521, citing Toulson v. Beyer, 987 F.2d 984 (3d Cir. 1993). Consequently, it concluded that Banks' petition was not mixed under Rose v. Lundy, and it therefore denied the Commonwealth's motion to dismiss the petition.

The Commonwealth then moved again to dismiss the petition under Rose v. Lundy, this time alleging that Banks

had not exhausted his claim concerning waiver of his right to counsel. The district court denied the motion because Chief Justice Nix in Banks I based his dissenting opinion precisely on that issue. Banks v. Horn, Civ. No. 96-0294, at (M.D. Pa. July 11, 1996). Consequently, the district court believed that the waiver of counsel contention was available to the entire Pennsylvania Supreme Court, and thus had been "fairly presented" to that court, even if only by the dissent. The district court also found that the Pennsylvania Supreme Court sufficiently addressed the issue in Banks II.

Thus, the stage was set for the district court to address the exhausted claims on the merits and it did so in Banks IV. The court began its analysis by discussing the effect of

6

the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, which was enacted on April 24, 1996, two months after Banksfiled his habeas petition. The court noted that the courts of appeals were divided on whether the AEDPA applies to cases pending on the date of its enactment, but found that it need not resolve that question because it would make no difference "if no factual matters arise which require the application of the new standard of proof, or if no rule of law is applicable which may not be `clearly established.' " Banks IV, 939 F. Supp. at 1169, citing Dickerson v. Vaughn, 90 F.3d 87, 90 (3d Cir. 1996).

The court found that the outcome of this case would be the same under the AEDPA and under prior law. Id. at 1176. The court also found that the provisions in the AEDPA pertaining to death penalty litigation procedures did not apply because Pennsylvania's Capital Unitary Review Act only applies to cases in which the death penalty was imposed after January 1, 1996. Banks IV, 939 F. Supp. at 1168. The district court ultimately rejected all of Banks' exhausted claims on the merits but did not address claims 7, 9, and 11, which were procedurally barred.

In view of its conclusions, the court denied Banks' petition. Nevertheless, it found that there was "probable cause" to appeal, indicating that "[w]hile most of the claims raised by Banks do not seem to be particularly close issues, those issues related to the procedural bar at least are sufficiently close for a certificate of probable cause. We therefore shall so certify. . . ." Id. at 1176. The court extended the stay of execution "until final disposition of any appeal . . . ." Id. Banks then appealed. We exercise plenary review on this appeal. See Ross v. Petsock, 868 F.2d 639, 640 (3d Cir. 1989).

Significantly, on January 15, 1997, after he filed this appeal, Banks filed a second PCRA petition in the Luzerne County Court of Common Pleas in which he raised claims 7, 9, and 11, the claims which the district court found were procedurally barred, as well as one additional claim. On August 20, 1997, the common pleas court denied the petition holding that it was procedurally barred. Commonwealth v. Banks, Nos. 1290 etc., slip op. at 7 (C.P.

Ct. Aug. 20, 1997). Nevertheless, the court indicated that "it may well be that the Supreme Court will review the merits, and accordingly we will take the time to explain why we believe and find each of the issues raised is without any legal merit." Id. The court then did exactly that.

## II. DISCUSSION

We first address a preliminary procedural issue. As we have indicated, Banks filed his petition before the effective date of the AEDPA, but the district court adjudicated the matter after that date. Nevertheless, in conformity with prior law, the district court issued a certificate of probable cause rather than a certificate of appealability as provided in AEDPA. We have determined that under the AEDPA, 28 U.S.C. S 2253(c)(1), district courts can issue certificates of appealability. United States v. Eyer, 113 F.3d 470, 472-74 (3d Cir. 1997). In this case we need not decide whether the district court should have issued a certificate of appealability rather than of probable cause as we will treat the certificate of probable cause as both a certificate of probable cause and a certificate of appealability because we ultimately may hold in some future case that the AEDPA governs procedural issues on appeals filed after its effective date. Furthermore, we face no issue regarding the scope of the certificate, see 28 U.S.C. S 2253(c)(3), as we are confining our disposition to the single issue on which the district court granted the certificate. See Eyer, 113 F.3d at 474.

Banks argues that the district court erred in finding that the relaxed waiver standard, applicable to death penalty cases in Pennsylvania state courts, does not apply to second or subsequent PCRA petitions. He contends that "waiver will never be applied in a capital case where the result would be the imposition of a sentence of death in a manner clearly contrary to the express law of the land," br. at 18, even in a proceeding initiated by a second PCRA petition. Thus, he urges that his petition was mixed because the Pennsylvania courts would not hold that his

unexhausted claims are procedurally barred. Therefore, in his view the district court erred in not dismissing his petition under Rose v. Lundy.

In order to prevent federal habeas corpus review, a state procedural rule must be "consistently or regularly applied." Johnson v. Mississippi, 486 U.S. 578, 588-89, 108 S.Ct. 1981, 1988 (1988); see also Ford v. Georgia, 489 U.S. 411, 423-24, 111 S.Ct. 850, 857 (1991). Nevertheless, the Supreme Court has held that if a state supreme court faithfully has applied a procedural rule in "the vast majority" of cases, its willingness in a few cases to overlook the rule and address a claim on the merits does not mean that it does not apply the procedural rule regularly or consistently. Dugger v. Adams, 489 U.S. 401, 410 n.6, 109 S.Ct. 1211, 1217 n.6 (1989). Accordingly, "an occasional act of grace by a state court in excusing or disregarding a state procedural rule does not render the rule inadequate" to procedurally bar advancing a habeas corpus claim in a district court. Amos v. Scott, 61 F.3d 333, 342 (5th Cir. 1995).

Therefore, we examine the decisions of the Pennsylvania Supreme Court in death penalty cases to ascertain whether that court consistently or regularly bars second or subsequent PCRA petitions which may not meet the court's criteria for such petitions, which include the existence of "a strong prima facie showing . . . that a miscarriage of justice may have occurred." Commonwealth v. Beasley, 678 A.2d 773, 771 (Pa. 1996), cert. denied, 117 S.Ct. 1257 (1997). We also consider whether the Pennsylvania Supreme Court, in reviewing petitions, will treat particular issues on the merits even though they appear to be procedurally barred because, as the district court noted, under the PCRA, 42 Pa. Cons. Stat. Ann. S 9544(b) (West Supp. 1997), Banks' claims 7, 9, and 11 appear to be waived and thus to be procedurally barred in the state courts. See 42 Pa. Cons. Stat. Ann. S 9543(a)(3) ("To be eligible for relief under [the PCRA], the petitioner must plead and prove . . .[t]hat the allegation of error has not been previously litigated or waived."). We consider both points because in Pennsylvania a procedural bar may arise with respect to a second or subsequent PCRA petition as a whole or with respect to particular issues within the petition.

Of course, review of the Pennsylvania Supreme Court decisions is critical because as we explained in Toulson v.

Beyer, 987 F.2d at 988-89, in the absence of a state court decision indicating that a habeas corpus petitioner is clearly precluded from state court relief, the district court should dismiss the claim for failure to exhaust even if it is not likely that the state court will consider petitioner's claim on the merits. We more recently applied this policy in Doctor v. Walters, 96 F.3d 675, 683 (3d Cir. 1996) (internal quotation marks and citation omitted):

> [W]e must be certain that state review is clearly foreclosed lest we deprive state courts of an opportunity to correct their own errors, if any. It is therefore not for this Court to decide whether the Pennsylvania courts will conclude that the defects in the proceedings surrounding Doctor's conviction rise to the level of a miscarriage of justice as defined by Pennsylvania law. We cannot conclude that there is no chance that the Pennsylvania courts would find a miscarriage of justice sufficient to override the waiver requirements and permit review under the PCRA.

See also Peoples v. Fulcomer, 882 F.2d 828, 831-32 (3d Cir. 1989).

Fortunately, we are not without guidance from the Pennsylvania Supreme Court on whether that court consistently or regularly applies procedural bars to second or subsequent PCRA petitions in death penalty cases either to the petition as a whole or as to issues within it. In Commonwealth v. Szuchon, 633 A.2d 1098, 1099-1100 (Pa. 1993), the court initially rejected the petitioner's claims on the merits. The court then found that those claims had been litigated previously and thus could not be addressed in a PCRA action, and ended by finding that because the petitioner failed to meet the criteria for a second or subsequent petition, the PCRA court did not err in denying the petition. Thus, the court rejected the petitioner's claims on the merits before finding them procedurally barred.

In Commonwealth v. Travaglia, 661 A.2d 352 (Pa. 1995), a death penalty case involving a second PCRA petition, the court began by outlining the criteria for post conviction relief under the PCRA. Then, after quoting the then existing PCRA waiver provisions, it stated: "We note, however, that

10

it is this Court's practice to address all issues arising in a death penalty case, irrespective of a finding of waiver." Id. at 356 n.6. The court then set forth the criteria for

entertaining a second PCRA petition, after which it noted: "[i]t is with awareness of this standard that we proceed to consider Appellant's claims." Id. at 357.

In the balance of its Travaglia opinion, the court extensively discussed the merits of all of petitioner's numerous claims except for a claim previously litigated. Id. at 365-66. The court even assumed arguendo for the purposes of several claims that there is a right to effective assistance of counsel on collateral attack under the state constitution, id. at 367-69, "[i]n the interest of giving a condemned man the benefit of every possible doubt," id. at 367. The court's extensive discussion of claims pertaining to post-conviction proceedings, id. at 367-70, makes clear that it did not limit its inquiry to whether there had been a miscarriage of justice at trial, the applicable criterion for entertaining a second petition. Indeed, the court did not expressly address that question at all.

Finally, in Commonwealth v. Beasley, 678 A.2d 773, a death penalty case, the Pennsylvania Supreme Court stated that a "second or subsequent post-conviction request for relief will not be entertained unless a strong prima facie showing is offered to demonstrate that a miscarriage of justice may have occurred." Id. at 777. This standard requires a showing of either actual innocence or that the proceedings resulting in conviction were "so unfair that a miscarriage of justice occurred which no civilized society can tolerate." Id. The court found that the petitioner did not meet either test, so that the PCRA petition "could be dismissed on this ground alone." Id. However, the court went on to state that "[n]evertheless, since this is a capital case, this court will address appellant's claims." Id.

The court then noted that the petitioner still must comply with the general requirements for filing a PCRA petition, that is that the claims have not been previously litigated or waived, or, if waived, that the waiver is excused. Id. at 778. The court found that pursuant to these requirements the petitioner's ineffective assistance of counsel claims should be addressed. Yet the court went further and addressed a

11

claim, the withholding of exculpatory evidence, unrelated to the claim of ineffective assistance of counsel, without even mentioning whether the issue had been previously litigated (which we recognize is not likely) or waived. Id. at 783. The court therefore decided Beasley on the merits rather than on the basis of either of the two procedural bar rules: one limiting second petitions as a whole, and one barring consideration of waived or previously litigated claims.

Indeed, the passage quoted above -- "since this is a capital case, this court will address appellant's claims" -- suggests that the general rule concerning second PCRA petitions does not apply to capital cases.

We conclude from Szuchon, Travaglia, and Beasley that, notwithstanding a procedural bar, it is possible that in a death penalty case the Pennsylvania Supreme Court will not refuse either to entertain a second PCRA petition or to address the claims raised in it. Indeed, as we explained above, the common pleas court in Banks' second petition apparently thought the same thing as it indicated that despite its determination that the petition was barred "it may well be that the Supreme Court" will review its merits.[1] Accordingly, we conclude that the district court erred in finding Banks' unexhausted claims procedurally barred. Although the district court correctly found in Banks III that Banks' unexhausted claims do not meet the stated criteria for Pennsylvania courts to consider a second PCRA petition, we believe that Banks III did not give adequate recognition to the Pennsylvania Supreme Court cases demonstrating that it effectively looks beyond those criteria in death penalty cases.

In reaching our result, we have not overlooked the Commonwealth's arguments that the Pennsylvania Supreme Court has declared issues waived in some death penalty cases. However, in the cases the Commonwealth

_____

1. The common pleas court set forth that possibility because it believed that the Supreme Court "may not always have found and enforced the waiver rules." Commonwealth v. Banks, slip op. at 6. It was of the view, however, that "a trial court has no authority to ignore the clear letter and spirit of the legislative directions contained in the [PCRA]." Id. Of course, we are deciding this case on the basis of what the Supreme Court is likely to do.

12

cites, which we note in the main are direct appeals, notwithstanding having declared the issues in question waived, the court nevertheless discussed their merits. See Commonwealth v. Fisher, 681 A.2d 130, 136, 139-40 (Pa. 1996) (issue held waived but rejected on the merits); Commonwealth v. Lewis, 567 A.2d 1376, 1381 (Pa. 1989) (noting that "[a]lthough waiver of any claim in a capital case appears to be contradictory to the relaxed waiver rules afforded [death penalty] appellants" claims may be waived, but still considering the merits of the claim); Commonwealth v. Peterkin, 513 A.2d 373, 378-79 (Pa. 1986).

The Commonwealth also cites Commonwealth v. Jasper, 610 A.2d 949, 953 n.6 (Pa. 1992), but that case merely reaffirms "the rule that challenges to the selection of a jury can be waived by a failure to object appropriately." The court nevertheless refused to address the waiver problem "[b]ecause our law firmly disposes of the issue of excludability on the merits." On the other hand, Commonwealth v. DeHart, 650 A.2d 38, 43 (Pa. 1994), which the Commonwealth also cites, was a PCRA case, and it provides some support for the Commonwealth's arguments because there the court refused to address a previously litigated claim. However, the court vacated the sentence on other grounds.

We also have not overlooked the Commonwealth's contention that Banks does not meet the criteria cited in Szuchon for entertaining a second PCRA petition. Szuchon, 633 A.2d at 1099-1100. Yet in Szuchon the court entertained a petition which also failed to meet those criteria, apparently considering the case on the merits rather than according to the procedural rule. Id. at 1099.

At most, the cases on which the Commonwealth relies, including Szuchon, demonstrate that the Pennsylvania Supreme Court does not apply the Pennsylvania procedural bar rules consistently in death penalty cases. The cases do not indicate that an examination of the merits of Banks' claims is "clearly foreclosed" as Toulson requires for us to find them procedurally barred. We said in Toulson that "we are uncertain how the New Jersey state courts would resolve the procedural default issue. In light of this, we will

13

not presume how the state courts would rule on [petitioner's] claims." Toulson v. Beyer, 987 F.2d at 989. We are no more certain as to how the Pennsylvania Supreme Court will view Banks' claims 7, 9, and 11.

In this regard we point out that federal courts should be most cautious before reaching a conclusion dependent upon an intricate analysis of state law that a claim is procedurally barred. Toulson surely made that point clear and the enactment of the AEDPA, which overall is intended to reduce federal intrusion into state criminal proceedings, reenforces the point. In questionable cases, even those not involving capital punishment, it is better that the state courts make the determination of whether a claim is procedurally barred.

Finally, the Commonwealth contends that the 1995

amendments to the PCRA, as distinguished from the inapplicable Capital Unitary Review Act procedures, show that Banks' petition is barred. See 42 Pa. Cons. Stat. Ann. S 9545(b)(1) and (2) (West Supp. 1997). The Commonwealth argues that any second PCRA petition Banks filed would be untimely (a third basis for erection of a procedural bar), and that even if timely his unexhausted claims fail to meet the criteria for granting post-conviction relief. Br. at 19-22.

While it is true that the text of the 1995 PCRA amendments supports these contentions, it is not clear that these amendments are dispositive. The Commonwealth does not refer us to a Pennsylvania Supreme Court case applying the PCRA as amended in 1995 to support its views. Furthermore, in Szuchon and Beasley the Pennsylvania Supreme Court addressed the merits of claims which seemingly were precluded by the PCRA provisions then in force. We also point out that the Pennsylvania Supreme Court seems to exercise strong control of procedures in death penalty cases. Indeed, on August 11, 1997, the court issued an order pursuant to its administrative powers in Pa. Const. art. 5, S 10, in In re: Suspension of the Capital Unitary Review Act etc., No. 224, in which it suspended permanently the Capital Unitary Review Act.

In the circumstances, we are not confident that the

14

Pennsylvania Supreme Court, even in the face of the 1995 amendments to the PCRA, will abandon its practice of reaching the merits of claims in PCRA petitions in capital cases regardless of the failure of the petition to meet the appropriate procedural criteria.2 Consequently, applying Toulson, we cannot find that review of Banks' unexhausted claims has been foreclosed.3

III. CONCLUSION

In concluding we make two points. First, we are well aware that notwithstanding this opinion, the Pennsylvania Supreme Court may hold that Banks' unexhausted claims are procedurally barred on any of the possible bases to which we have made reference. Indeed, we are not holding that they are not barred and certainly our opinion could not have a preclusive effect on that point in the Pennsylvania courts. We are holding only that we cannot say with confidence that they are barred. Second, in reaching our result we are sensitive to the independence of the Pennsylvania courts and of that state's sovereignty. Thus, we are reluctant to consider a habeas corpus claim

at a time when a petitioner may be able to invoke a state
procedure to grant a remedy in the state courts if he is

_____

2. In writing this opinion we have assumed, as did the common pleas
court when it denied Banks' petition on August 20, 1997, that the
Pennsylvania Supreme Court ultimately will decide whether claims 7, 9,
and 11 are procedurally barred. That assumption, however, may not be
correct because the 1995 amendments to the PCRA provide that an
order denying a petitioner relief in a case in which the death penalty has
been imposed "shall be reviewable only by petition for allowance of
appeal to the Supreme Court." 42 Pa. Cons. Stat. Ann. S 9546(d) (West
Supp. 1997). However, because Banks has at least the opportunity to
seek leave to appeal in the Supreme Court (and failing to obtain that
leave may be able to appeal to the Superior Court) we cannot say that
he has no further state remedies.

3. It is, of course, possible in death penalty cases (and other cases as
well) that future experience will show that the Pennsylvania Supreme
Court consistently and regularly applies the 1995 amendments to the
PCRA and thereby creates a procedural bar sufficient to satisfy the
standard of Johnson v. Mississippi, 486 U.S. at 589, 108 S.Ct. at 1988.
That time, however, has not yet been reached.

15

entitled to relief. In view of our conclusions, we will vacate
the judgment of August 30, 1996, and will remand the case
to the district court to dismiss the petition without
prejudice as mixed.

A True Copy:
Teste:

        Clerk of the United States Court of Appeals
        for the Third Circuit

16